Review to consider an award of the Industrial Accident Commission. William J. Slattery was engineer of the fishing tug Condare, owned by the Borzone Fish Company. Upon an afternoon in January she was moored in her customary berth — a wharf between piers 23 and 25, on the San Francisco waterfront. The weather was stormy, and the captain of the tug considered it expedient to move his vessel from this wharf to a place alongside of the schooner Crescent City. The Crescent City lay next to the steamer Moana, which last vessel was moored to pier 25, a short distance away from the Condare's usual berth. As thus placed, to go ashore from the Condare necessitated debarking from the Condare to the Crescent City, crossing the Crescent City, climbing onto the Moana, crossing her, and from her reaching the wharf. Slattery knew the position of the Condare, and knew also that it was a temporary location chosen for protection against the stormy weather. After the tug was thus moored he went ashore for purposes of his own, unconnected with his employment, and spent the night on shore. It was a Saturday night. It was Slattery's duty to return to his vessel before 4 o'clock upon the following morning. Not having so returned, the captain of the tug went to the boardinghouse where Slattery spent the night and had him called for duty. It was Slattery's duty to have reported on his vessel without any such summons. Slattery did not know that the *Page 315 
tug during the night had been shifted back, as in fact it had, to its own berth. He went to pier 25, safely crossed the Moana and the Crescent City, and discovered that his vessel was not there. He then called from the deck of the Crescent City "What are you doing over there?" Captain Johnson, of the Condare, hearing the call and recognizing Slattery's voice, replied, "I don't know, Bill, come on over here." Slattery answered "All right," and seeking to return to the wharf and thence to his vessel, fell into the bay between the Crescent City and the Moana and was drowned.
This fairly epitomizes the facts, though there are certain statements in the findings of the commission which are in the nature of deductions or conclusions from these unquestioned facts which call for animadversion. Thus it is in terms declared that when Slattery hailed his ship and was told by the captain to "Come on over here," Slattery had "reported for duty and was directed by his superior to proceed to the boat Condare at its changed position." These statements must be treated as conclusions of law, for as findings of fact they are utterly without evidence to sustain them. The unquestioned facts are that it was Slattery's duty to report to his boat without any instruction, and that he was no more on duty when standing upon the deck of the Crescent City than when he was summoned at his hotel, and that the captain's call to him to "Come on over here" (since it was Slattery's duty to go to his ship without any instructions), amounted to no more than telling Slattery the location of the ship. Again it is found that the captain of the Condare "caused Slattery to be called at the hotel where said Slattery was staying, but did not leave word nor advise said Slattery with regard to the position of the boat Condare." The evidence establishes without conflict that the captain caused Slattery to be called because Slattery had failed in the performance of his express duty, which was to report to the ship at a given hour, and the fact that the captain did not tell Slattery — a man knowing the usual berth of the ship and familiar with the San Francisco waterfront — that the Condare was at its usual berth, is a circumstance immaterial to this consideration, since there was not the slightest duty upon the captain's part so to tell him. Eliminating, then, from this consideration such declarations as those above noted, which, if they are to be regarded as findings, are findings absolutely unsupported by the evidence, *Page 316 
and if they are to be regarded as conclusions of law are conclusions of law erroneously drawn, we are enabled to approach the one real question in controversy, and we do so with the disposition to give to the terms of the act the utmost liberality of construction of which they are legally capable, to the end of effectuating the beneficent purposes of the act itself.
So far as affects this question, the employer's liability or nonliability rests upon the construction to be given to section 12 (a) and subdivision 2 of the Workmen's Compensation Act. (Stats. 1913, pp. 279, 283.) That law is as follows: Section 12 (a). "Liability for the compensation provided by this act, in lieu of any other liability whatsoever, shall, without regard to negligence, exist against an employer for any personal injury sustained by his employees by accident arising out of and in the course of the employment and for the death of any such employee if the injury shall proximately cause death, in those cases where the following conditions of compensation concur: . . . (2) Where, at the time of the accident, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment as such." Admittedly the deceased was an employee of the petitioner. Admittedly he met his death while, in the broadest sense, he was such employee. The question is: At the time he met his death was he "performing service growing out of and incidental to his employment and acting within the course of his employment?" It will be noted that section 12 (a) expresses the conditions generally under which compensation for injury shall be paid. It is to be paid when and only when the injury is a personal injury sustained by the employee "by accident arising out of and in the course of the employment." It will also be noted that subdivision 2, having specific reference to compensation in the event of death, does not broaden the right to this compensation beyond the language just quoted, but, if anything, perhaps restricts it, and certainly makes it more specific by the added declaration that to entitle the representatives of the deceased to recover in the case of death, the employee must not only be "performing service growing out of and incidental to his employment," but must also be "acting within the course of his employment as such." Therefore it is quite within the meaning of the statute to say that the *Page 317 
controlling language found in section 12 (a) is not modified, but merely paraphrased and made more definite by the language of subdivision 2. Next it is pertinent to call attention to the fact that this language, injury "by accident arising out of and in the course of the employment" is language taken literally from the Workmen's Compensation Act of England, enacted by Parliament in 1897, section 1 of that act declaring that an employer shall be liable "if in any employment to which this act applies personal injury by accident arising out of and in the course of the employment is caused to a workman." (L. R. Stats. 60-61 Vict., p. 53.) This language, then, had been for many years upon the English statute books before it was adopted and made a part of the Employers' Workmen's Compensation Act of this state, and the courts of England had been called upon, as was inevitable, to construe this phrase many times before our enactment of it. Under familiar principles, when a statute which has received judicial construction by the courts of one state is adopted and re-enacted by another state, it is so adopted and re-enacted in consonance with the construction put upon it by the courts of the first sovereignty. The common sense of this rule of construction is so apparent that it needs in its support nothing more than the obvious suggestion that if the later lawmakers did not design that the construction put upon any given language should obtain, they would modify and change that language to express their different intent.
We may now with profit consider these English adjudications, and, first, those upon which respondent places reliance. InRobertson v. Allan Brothers Co., 1 B. W. C. C. 172, the steward of a steamship went on shore in the evening under permission, for his own purposes. He returned late in the evening and proceeded to board his ship by means of the cargo skid or stage which stretched from the ship to the quay. It was a breach of discipline to use the skid, but it was frequently used by members of the crew. In stepping from the skid to the deck he slipped or stumbled, fell down the unguarded hatch into the hold, and died from the effects of the injuries which he sustained. It was not disputed that the accident "arose out of his employment." The question debated was whether it was "in the course of his employment." It was held by the master of rolls that in view of all the circumstances the accident occurred in the course of the employment. *Page 318 
In Moore v. Manchester Liners, Ltd., 3 B. W. C. C. 527, a fireman had gone on shore to procure certain personal necessaries. Returning to his ship he fell off a ladder, which was the only means provided of gaining access from the quay to the ship. The house of lords held this accident to have befallen the deceased in the course of his employment, Lord Loreburn, L. C., saying: "In these circumstances it was not, I think, contested that the accident which caused death arose out of the employment; the danger of falling from a ladder which gave the only access from the quay to the ship being, in its nature, incidental to the service of a seaman." In Keyser v.Burdick Co., 4 B. W. C. C. 87, a riveter working on a ship at the dock was about to go ashore. Coming on deck he found that the vessel was being moved to a dry dock and was already a short distance from the quay. The gangway had been removed. There was no other means of getting ashore than by sliding down a rope which still held the vessel to the quay. A fellow-workman had thus gone ashore in safety. Keyser attempted to follow him. The rope gave way. He was thrown against the quay and injured. The master of the rolls said: "I am satisfied there is no ground for this appeal. The man, when he came on deck, wanted to get ashore, and he found that the vessel was a little away from the quay side and that the gangway had gone. He saw one of his mates use the rope, and he followed, but he met with an accident. The county court judge found that, in the circumstances, this was a reasonable step to take by the man to get off the ship, when the regular means of exit was closed. We cannot interfere with his findings." In Kearon v. Kearon, 4 B. W. C. C. 435, a seaman was on shore leave. When he returned his vessel was some five or six feet from the pier, the top of the ship's rail being about three feet lower than the quay. No gangway had been provided, but a ladder was used in getting on board. Not seeing the ladder he hailed the ship, and receiving no answer, jumped from the pier to the vessel. His leg struck on the rail and he was permanently injured. There was no question but that the accident occurred in the course of his employment. The proposition debated was whether or not the seaman had taken a wantonly reckless step in his effort to reach the ship, and it was held that he had not. In the cases of Kitchenham v. Steamship Johannesburg, and Leach v. Oakley,Street Co., 4 B. W. *Page 319 
C. C. 91, two seamen on different ships had been ashore for their own purposes. They were both drowned before reaching their ships. In the Leach case access was obtained to the ship by a ladder extending from the wharf to the ship. As the sailor was mounting this ladder his foot slipped, he fell between the ship and the wharf and was drowned. Fletcher Moulton, L. J., delivering the judgment, first pointed out that "any accident that occurs during the period of his being on shore is generally, if not necessarily, due to a danger to which he is exposed as a member of the public and not as one of the crew on the ship, and therefore is one which does not 'arise out of his employment,' " and the opinion proceeds as follows: "But if, whether in his hours of leisure or not, it becomes necessary for him, in fulfillment of his employment, to get on board his vessel, an accident occurring in his doing so is normally an accident arising out of his employment, because it is due to a danger incidental to his service in that ship. In the cases before us the accident occurred on the return of the seaman to the ship immediately prior to his actually getting on board. This is the critical moment when the dangers to which he is exposed change from being of the one class to being of the other class, and it will frequently be a difficult task to draw the line between the two. But I do not think it difficult to lay down the general principle by which our decisions ought to be guided. The return to the ship is in the course of his employment, but the risks do not become risks arising out of his employment until he has to do something specifically connected with his employment on the ship. Thus, if the risk is one due to the means of access to the ship, as inMoore v. Manchester Liners Ltd., the accident is rightly said to arise out of his employment; but if the accident is shown to arise from something not specifically connected with the ship it cannot be said to arise out of his employment. I do not think that the dividing line is when he actually touches the ship or the special means of access thereto. For instance, if it was shown that when the sailor returned to the ship there was a dense fog, and that in trying to find the gangway, which I will suppose was not lighted, he fell into the water and was drowned, I think the accident would arise out of his employment. But if all that is shown is that it occurred during his return to the ship, but while he was still on the shore, and before he had taken any specific *Page 320 
step toward getting on board the vessel, I think that it would not thereby be established that the accident arose out of his employment." In the Kitchenham case access to the ship was by a gangway. The evidence showed that the sailor on returning to the ship came upon the wharf and walked toward the gangway. It was not shown that he ever reached the gangway. "A splash was heard a little abaft the inboard end of the gangway." Says the court: "It is for the applicant to prove that the accident arose out of the employment, and if the evidence is not sufficient to establish this the claim fails," and it was held that the evidence failed to establish a case for compensation. In Jackson v. General Steam Fishing Co. Ltd., 2 B. W. C. C. 56, a workman was employed to watch trawlers as they lay in the harbor. His duties compelled him to be on the quay to which the trawlers were moored. In the course of his watch he left the boats and went to a hotel for refreshment. He was absent a short time, had returned to the quay, and while descending a fixed ladder attached to the quay to go on board one of the trawlers, he fell into the water and was drowned. He was in the performance of his duty in leaving the quay to go onto the trawler. He used the means provided and at hand, and it was held that he met his accident in the course of his employment. This completes a review of the cases cited and relied upon by respondent. From them we will turn to petitioner's authorities.
In Walters v. Staveley Coal Iron Co. Ltd., 4 B. W. C. C. 303, a miner was proceeding to his work along a footpath prepared by his employers for their workmen's convenience. He slipped and sustained injury. There was evidence that the employers knew that the footpath was not safe. The question considered by the house of lords was: Did the accident "arise out of the employment and did it arise in the course of the employment?" It was held that there was "no evidence which would have justified a finding that the accident arose out of the employment," and it was declared to be immaterial that the employee was injured upon this footpath prepared for his use by his employers "since the man was merely going to his employment." In Gilmour v. Dorman, Long Co. Ltd., 4 B. W. C. C. 279, a workman was injured upon vacant land belonging to his employer, over which for many years he had been in the habit of going to and from his work, by walking along a footpath over the land. The master of the *Page 321 
rolls holding that the accident did not arise out of his employment, declared: "I cannot regard the case as in any way different from the case where a man slips on the ice on a public road, a quarter of a mile from his employer's works. It has been repeatedly held that a man is not entitled to the protection of the act when on his way from his home to the works." Dealing specifically with seamen, Leach v. Oakley,Street Co. has already been discussed. In Biggart v.Steamship Minnesota, 5 B. W. C. C. 69, a seaman had gone ashore on leave, for his own purposes. He returned late at night and found that his ship had been moved to another part of the dock. He proceeded to make his way to the ship along the dock side, on which were many railway lines. He was injured by a train on the docks two hundred yards from his ship. Said the master of the rolls: "This appeal seems more hopeless than any we have had to deal with. . . . The accident took place two hundred yards from the ship. That was not an accident 'arising out of.' "
Other cases not dealing specifically with ships and their crews, but having a bearing upon the question of what constitutes an injury "arising out of employment" areCaton v. Summerlee etc., 39 Scott. L. R. 762, where it was held that a workman who, after finishing his day's work, was injured while walking along a private branch railway leading from the employer's colliery to the main line of a railroad, had not met with an accident arising out of or in the course of his employment. In Fumiciello Case (Leveroni v. Travelers' Ins.Co.), 219 Mass. 488, [107 N.E. 349], an employee was killed while crossing a railroad track on private property over which it was necessary for him to pass. The court held that the death did not arise out of the employment, and the fact that the deceased was upon private property as a licensee made no difference; that the principle was the same as if he had been killed on a public highway. To like effect is Byrket v. LakeShore Ry. Co., 29 Ohio Circuit Court Rep. 614 (affirmed by Ohio supreme court, 75 Ohio St. 625, [80 N.E. 1124]), where it was held that an injury sustained by a workman while walking on the railroad tracks owned by his employer, while complying with a direction to report for duty, was not an injury arising out of his employment.
With these authorities before us we think the governing principles of all the decisions are not difficult of discernment, *Page 322 
The first of these is that there are excluded from the benefits of the act all those accidental injuries which occur while the employee is going to or returning from his work, and it matters not in this respect whether his journey takes him over public roads or private ways. Second, in the case of vessels, a seaman or other employee is entitled to the benefits of the act if injured while using the instrumentality provided in either reaching or departing from his ship, and in case no instrumentality at all is provided, as in Kearon v. Kearon, 4 B. W. C. C. 92, the injured employee will not be excluded from the benefits of the act if he adopts some perilous means of boarding his ship, as by endeavoring to leap to her deck from the pier. But in the case of an employee seeking to board his vessel, until he has come into such proximity to her as to be using or immediately about to use the gang-plank, ladder, or other instrumentality "specifically connected with the ship," his accident does not arise out of his employment, this indeed being the precise language of Moulton, L.J., as above quoted inLeach v. Oakley, Street Co., where he says: "If the accident is shown to arise from something not specifically connected with the ship, it cannot be said to arise out of his employment." In the very broadest sense, of course, it is true that an injury which happens to a man who is on his way to his place of employment is an injury "growing out of and incidental to his employment," since a necessary part of the employment is that the employee shall go to and return from his place of labor. But it is to be noted that the right to an award is not founded upon the fact that the injury grows out of and is incidental to his employment. It is founded upon the fact that the service he is rendering at the time of the injury grows out of and is incidental to the employment. Therefore, an employee going to and from his place of employment is not rendering any service, and begins to render such service only when, as has been said, arriving at the place of his employment, he proceeds to use some instrumentality provided, by means of which he immediately places himself in a position to perform his tasks.
Such beyond question is the reasoning of the cases and the meaning of their adjudications, and applying this reasoning to the facts in the case at bar it is too plain to call for lengthy discussion that Slattery, in his progress toward his vessel, had not reached the point where it could be said that he met his *Page 323 
death in "performing service growing out of and incidental to his employment."
The award is therefore annulled.
Shaw, J., Sloss, J., Melvin, J., Lorigan, J., and Angellotti, C.J., concurred.