[S. F. No. 22857. In Bank. Mar. 31, 1972.]

MARTHA R. DIMMIG et al., Petitioners, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
CALIFORNIA CASUALTY INDEMNITY EXCHANGE, Respondents.

## COUNSEL

Dreyer, Shulman, Butler & Dubbin, William M. Dubbin and Brian N. Lawther for Petitioners.

Levy & Van Bourg and Berry J. Williams as Amici Curiae on behalf of Petitioners.

Rupert A. Pedrin, Marcel L. Gunther, Hanna & Brophy and Robert N. MacLean for Respondents.

## OPINION

**BURKE, J.**—Petitioners are the widow and children of William Dimmig who was killed in an automobile accident while returning home from night classes at Notre Dame College in Belmont, California. Petitioners seek review of the decision of the Workmen's Compensation Appeals Board adopting the findings and recommendations of its referee denying compensation benefits on the ground that Dimmig was not in the course of his employment at the time of his death. We have concluded that the undisputed facts before the referee require the opposite result.

In August 1969 Dimmig was hired by the Memorex Corporation as a contracts administrator. Before he was hired Dimmig had been working as a contracts administrator for another employer and had been attending night classes at Notre Dame College in order to obtain a bachelor's degree in economics. Dimmig continued his studies at Notre Dame College during his employment with Memorex. On October 30, 1969, on his way home from a class in money and banking, Dimmig was killed in an automobile accident.

Memorex had established a policy of encouraging its employees to attend college and, upon successful completion of a particular course, Memorex would reimburse the entire cost of tuition and books for courses directly related to the employee's job and 50 percent of such costs for courses not directly related to the job but required for the degree being sought. The stated purpose of this program was "to encourage Memorex personnel to further their education in order to perform more effectively in their present jobs and increase their qualifications and knowledge for advancement." In order to be eligible to participate in the company's reimbursement program an employee normally had to have been employed by Memorex for six months. In Dimmig's case, however, this requirement had been waived.

The above facts are not disputed by the parties. There is some dispute, however, over petitioners' claim that Dimmig was "required" to obtain his bachelor's degree as a condition of his employment. The corporate executives responsible for Dimmig's selection each testified that Dimmig's employment was not conditioned upon continuation of his college work and that the question of education was not a major factor in the hiring discussions. The executives indicated that Dimmig was hired because of his previous job experience in contract administration and because he was considered promotable. There was also testimony that the company made a practice of including any special conditions to continued employment in the written offer of employment. No such conditions were included in the offer to Dimmig.

Respondents did not contradict, however, the substantial testimony that Dimmig believed a bachelor's degree was required for his continued employment with Memorex. Keith D. Chapel, a friend of Dimmig's, testified that Dimmig had indicated to him that "he [Dimmig] had been hired on the premise that he would finish his degree, because the job required a degree." George E. Wright, Dimmig's immediate supervisor at Memorex and one of those responsible for Dimmig's employment, testified that on at least three occasions Dimmig had expressed his belief that the company expected him to go on with his education.

With regard to the waiver of the six-month requirement for participation in the company's tuition reimbursement program, Wright testified that when Dimmig was told of the requirement "he came back to me, and since he felt that it was a condition, or since he felt that the company expected him to go to school, that the company should be willing to waive the six-month waiting period." Wright thereupon arranged for the waiver with the personnel department. There is no indication in the record that anything had been done by the company to dispel Dimmig's belief that his employment was conditioned on his continued class attendance.

The referee did not consider the question of whether or not Dimmig's continued education was a condition of his employment. He found only that the record is clear that all parties considered Dimmig's school attendance to be beneficial to both the employer and employee and that Memorex's furnishing of payment of expenses must be considered as additional compensation. The referee then concluded that Dimmig's injury could not be considered one arising out of and in the course of employment. In stating his reasons for this conclusion the referee notes that an employer receives some benefit from "fringe benefits" furnished to the employee such as vacations and health plans, and stated that "The Referee feels that it would

be stretching the law to make employee injuries during the course of a vacation or while proceeding to a doctor's office for a treatment of a non-industrial condition or while attending or proceeding to school, to be considered acts within the course and scope of the employment." In his recommendation to the board on petitioners' petition for reconsideration, the referee stated further that he "continues of the opinion that though the employer benefited from decedent's educational activity and paid for same, it was not a sufficiently direct benefit to make such school attendance an act within the course and scope of applicant's employment."

We disagree. Although, as the referee points out, the benefits to the employer from vacations and health care plans are so indirect as not to bring the activity within the employee's course of employment, the benefit received by the employer in this case is directly related to the employee's job functions and thus may be said to fall within the course of his employment. Before reaching this issue, however, we must dispose of respondents' contention that the board's decision is not subject to appellate review by virtue of the substantial evidence rule set forth in *LeVesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].

In *LeVesque,* we were concerned with the scope of judicial review of the evidence in workmen's compensation cases and held that, pursuant to the language of Labor Code section 5952, " 'The review by the court shall not be extended further than to determine, based upon the entire record . . . whether . . . [t]he order, decision, or award was not supported by substantial evidence.' " *LeVesque* does not, however, limit appellate review of errors of law in workmen's compensation cases. "Where, as here, there is no real dispute as to the facts, the question of whether an injury was suffered in the course of employment is one of law, and a purported finding of fact on that question is not binding on an appellate court." (*Reinert* v. *Industrial Acc. Com.,* 46 Cal.2d 349, 358 [294 P.2d 713]; *Rausch* v. *Workmen's Comp. App. Bd.,* 274 Cal.App.2d 357, 358 [79 Cal.Rptr. 148].)

The referee's opinion makes it clear that he based his decision upon his legal conclusion that the facts presented were insufficient to bring Dimmig's death within the course of his employment because the benefit to Memorex was not sufficiently direct. The only factual findings made by the referee were that Dimmig's attendance at Notre Dame College benefited Memorex and that the payment of expenses must be considered as additional compensation. ■ These findings are supported by substantial evidence and are binding on an appellate court. (*LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627.) ■ We are not, however, bound by the referee's conclusion of law that the facts found, coupled with the uncontra-

dicted evidence before the referee, are insufficient to bring the death of petitioners' decedent within the course of his employment. (*Reinert* v. *Industrial Acc. Com., supra,* 46 Cal.2d 349.) We may, therefore, proceed to determine that issue.

In *Pacific Indem. Co.* v. *Ind. Acc. Com.,* 26 Cal.2d 509, 514 [159 P.2d 625], we stated that: " 'If the particular act is reasonably contemplated by the employment, injuries received while performing it arise out of the employment, and are compensable. In determining whether a particular act is reasonably contemplated by the employment, the nature of the act, the nature of the employment, the custom and usage of a particular employment, the terms of the contract of employment, and perhaps other factors should be considered. *Any reasonable doubt as to whether the act is contemplated by the employment, in view of this state's policy of liberal construction in favor of the employee, should be resolved in favor of the employee.*' " (Italics added.)

Later, in *Reinert* v. *Industrial Acc. Com., supra,* 46 Cal.2d 349, 353 (quoting from *Employers' etc. Corp.* v. *Industrial Acc. Com.,* 37 Cal.App. 2d 567, 573 [99 P.2d 1089]), we stated the test as follows: " ' "The true rule to be derived from the cases is that the injury is compensable if received while the employee is doing those reasonable things which his contract of employment expressly or impliedly authorizes him to do." ' " In *Reinert* we held that an injury suffered by a camp counselor while horseback riding on her own time was within the scope of her employment because the undisputed facts indicated that "recreational horseback riding was considered by both employer and employee as part of the compensation; that such consideration was the practice of the employer; and that the danger from which the injury resulted was 'one to which he [the employee] is exposed as an employee in his particular employment.' " (P. 355.) We stated further that "There is ample authority to support petitioner's contention that an injury is compensable if it results from an activity contemplated by the employment, even though it occurs in a location not directly owned or controlled by the employer [citations]." (P. 356.)

In *Saala* v. *McFarland,* 63 Cal.2d 124, 129 [45 Cal.Rptr. 144, 403 P.2d 400], a personal injury action, we state: "It is established that injuries received while enjoying the benefits furnished by the employer arise out of the course of the employment [citing *Reinert* v. *Industrial Acc. Com., supra*], so that if defendant had been injured in the present accident she could have collected workmen's compensation."

Under this line of authority Dimmig's participation in night classes comes within the course of his employment. The facts are undisputed that Memo-

rex was encouraging Dimmig's educational activities which were found to benefit the corporation. The direct benefit to Memorex is indicated by the company's policy of encouraging employees to attend college "in order to perform more effectively in their present jobs." The fact that Memorex reimbursed 100 percent of the employee's expenses for courses directly related to the job while reimbursing only 50 percent of such expenses for courses not directly related to the job but required for the degree being sought, indicates that the emphasis of the program is on the type of activity which most directly improves the employee's ability to perform his assigned tasks more effectively. This kind of direct benefit is distinguishable from the indirect benefit received by the employer who provides a vacation or health plan for his employees. Such benefits are not directly related to the employee's actual job function, as is the case with the benefit involved here, but only serve to indirectly aid the employee's ability to perform by keeping him healthy and, hopefully, happy. The benefit, to the employer herein, coupled with the fact that the reimbursement was found to be a part of the employee's compensation, compels the conclusion that Dimmig's class attendance was contemplated by the contract of employment and was thus within the course of his employment. (*Reinert* v. *Industrial Acc. Com., supra,* 46 Cal.2d 349; *Pacific Indem. Co.* v. *Industrial Acc. Com., supra,* 26 Cal.2d 509.)[1]

This conclusion, however, does not dispose of the case. Since Dimmig was killed, not while attending classes, but on his way home from class, we must also determine whether compensation is barred by the so-called "going and coming" rule.

■ "Ordinarily, under the going and coming rule, an injury which occurs while an employee is driving to or from work is not compensable. This rule, however, is subject to many exceptions." (*Garzoli* v. *Workmen's Comp. App. Bd.,* 2 Cal.3d 502, 505 [86 Cal.Rptr. 1, 467 P.2d 833].) ■ The referee in this case was of the opinion that: ". . . if applicant's school attendance be considered an employment activity, the fact that the injury occurred while returning from school rather than while at school would not bar him from recovery. Travel to and from school would come under the well-recognized special errand exception to the 'going and coming rule.' " We are, of course, no more bound by this conclusion of law, than we are by the referee's conclusion that Dimmig's death did not occur in the course of his employment.

■ In determining whether the facts bring a case within the going and

[1]For cases from other jurisdictions involving self-education programs, see 1 Larson, Workmen's Compensation Law, section 2731, subdivision (a), pages 452.45-452.47.

coming rule or some exception to that rule, the mandate of Labor Code section 3202 must be kept in mind. (*Garzoli* v. *Workmen's Comp. App. Bd., supra,* 2 Cal.3d 502, 505; *Schreifer* v. *Industrial Acc. Com.,* 61 Cal.2d 289, 291 [38 Cal.Rptr. 352, 391 P.2d 832].) Section 3202 requires that the provisions of the Workmen's Compensation Act be "liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

In *Garzoli* v. *Workmen's Comp. App. Bd., supra,* 2 Cal.3d 502, 506, quoting from *Smith* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 814, 819-820 [73 Cal.Rptr. 253, 447 P.2d 365], we stated that the going and coming rule is subject to an exception which " 'arises from the principle that an employee "is performing service growing out of and incidental to his employment" (Lab. Code, § 3600) when he engages in conduct reasonably directed toward the fulfillment of his employer's requirements, performed for the benefit and advantage of the employer.' " In *Garzoli* compensation was awarded to a policeman, killed on his way home from his normal duty station at the normal time, who was *required* to wear his official uniform as he conspicuously rode to and from work on his private motorcycle. In *Smith* compensation was awarded to a social worker killed in an automobile accident on his way to work at the normal time because, as the majority held, he was *required* to bring his personal car to work for the benefit of the employer.

The *Smith* and *Garzoli* cases state an exception to the going and coming rule applicable to injuries occurring while the employee is traveling between his home and ordinary place of work, at the normal time. *Smith* recognizes, however, a further exception to the rule, namely, the so-called "special errand" or "special mission" doctrine which applies to cases where the employee is injured while going to or returning from an activity outside of his normal daily work routine. In such cases, according to *Smith,* the going and coming rule "succumbs . . . *because the employee there 'engage[s] upon a mission which incidentally or indirectly contribute[s] to the service and benefit of the employer.'* " (Italics added; 69 Cal.2d at p. 820, quoting from *Shell Oil Co.* v. *Industrial Acc. Com.,* 199 Cal.App.2d 426, 428 [18 Cal.Rptr. 540].)

It is significant that the cases which have considered the scope of the special mission doctrine have not held it essential that the special activity involved be required by the employer as a condition to employment. In *Shell Oil Co.* v. *Industrial Acc. Com., supra,* 199 Cal.App.2d 426, compensation was allowed for the death of an employee killed while returning home from a trip to pick up his car which had broken down two days earlier as he was on his way to attend a *noncompulsory* dinner given for the

benefit of the employer in a neighboring city. In awarding compensation the court pointed out that "The company invited the managers to the meeting to further its own purposes. Certainly when Byrd attended the meeting he was engaged upon a mission which incidentally or indirectly contributed to the service and benefit of the employer." (P. 428.) The court also stated that "In view of the fact that Byrd's return of his vehicle to Merced was a natural, normal and necessary result of his performing a special errand for his employer, we conclude that he was acting within the scope of his employment at the time the accident occurred." (P. 431.)

In *Boynton* v. *McKales,* 139 Cal.App.2d 777, 789 [294 P.2d 733], relied upon by the court in *Shell Oil Co.* v. *Industrial Acc. Com., supra,* 199 Cal.App.2d 426, the court said: "If the employee is not simply on his way from his home to his normal place of work or returning from said place to his home for his own purpose, but is coming from his home or returning to it on a special errand either as part of his regular duties or at a specific order or request of his employer, the employee is considered to be in the scope of his employment from the time that he starts on the errand until he has returned or until he deviates therefrom for personal reasons. [Citations.] *To such special missions the general test as to scope of employment applies.* It is not necessary that the servant is directly engaged in the duties which he was employed to perform, but included are also missions which incidentally or indirectly contribute to the service, incidentally or indirectly benefit the employer. [Citations.]" (Italics added.) The court then held that attendance at a social function may fall within the exception of the "special errand rule" if it "was connected with the employment and for a material part intended to benefit the employer who *requested or expected* the employee to attend." (Italics added.)

In *Schreifer* v. *Industrial Acc. Com., supra,* 61 Cal.2d 289, 291-292, we stated that compensation is not barred by the going and coming rule when the employee is requested to perform an unusual service, or a usual service at an odd hour, because "the trip is 'special' in that 'the bother and effort of the trip itself is an important part of what the employee is eventually compensated for.'" (Quoting 1 Larson, Workmen's Compensation Law.) We further explained that conduct is "special" when it is "extraordinary in relation to routine duties, not outside the scope of the employment." (P. 295.)

■ The rule which emerges from these cases is that when the employee engages in a special activity which is within the course of his employment, and which is reasonably undertaken at the request or invitation of the employer, an injury suffered while traveling to and from the place of such activity is also within the course of employment and is compensable.

█ We have concluded that the elements of this test are met in the instant case. Dimmig's attendance at Notre Dame College was a special activity as required by our holding in *Schreifer* v. *Industrial Acc. Com., supra,* 61 Cal.2d 289, 295, because it was not a part of his normal routine as a contracts administrator. The fact that Dimmig's attendance at the college may have been routine, in that he regularly attended classes at certain times during the week, does not affect the character of the activity as special. The school attendance was extraordinary in relation to Dimmig's routine duties at Memorex. In addition, Dimmig's travel to and from the college was not travel to and from his normal place of work at the normal hour.

As we have shown above, Dimmig's attendance of classes was within the course of his employment.

Finally, Dimmig's educational work was undertaken at the request or invitation of his employer. This invitation is indicated by the fact that a part of Dimmig's compensation consisted of the reimbursement of his educational expenses incurred through participation in a program designed to encourage employees to increase their effectiveness on the job. Memorex further encouraged or invited Dimmig's participation in the program by waiving its normal six-month waiting period required for reimbursement.

The decision of the Workmen's Compensation Appeals Board is annulled and the case is remanded to the board for proceedings consistent with the views expressed herein.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.