[S.F. No. 24758. Nov. 12, 1985.]

SANTA ROSA JUNIOR COLLEGE, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
JOANNE SMYTH, Respondents.

346

## COUNSEL

Mullen & Filippi, James T. Ponzio and Karen M. Land for Petitioner.

Warren L. Hanna, Hanna, Brophy, MacLean, McAleer & Jensen, Grancell, Grancell & Marshall, Angel Barnes, Parker & Dally, Joan E. Partritz, Twohy, Darneille & Frye, D. Lachlan Taylor, Kevin R. Twohy, Allen, Rhodes & Sobelsohn, Donald W. McVey, Hoge, Fenton, Jones & Appel, Raymond W. Haworth, Richard A. Krimen, Michael J. Brodie, Arthur Hershenson, Fernando Da Silva, Gary J. Lee and Jeffrey A. Rosen as Amici Curiae on behalf of Petitioner.

Fowler & Ball and Robert A. Fowler for Respondents.

Barry J. Williams, Airola, Williams & Dietrich, Raymond L. Hansen, Donald C. Green, Sue Gouge and Green & Azevedo as Amici Curiae on behalf of Respondent Smyth.

## Opinion

**KAUS, J.**[*]—The Workers' Compensation Act (Lab. Code, § 3201 et seq.) establishes the liability of an employer "for any injury sustained by his or her employees arising out of and in the course of the employment." Almost 70 years ago, we adopted the "going and coming rule" as an aid in determining whether an injury occurred in the course of the employment. Generally prohibiting compensation for injuries suffered by an employee while commuting to and from work, the going and coming rule has been criticized by courts and commentators alike as being arbitrary and harsh. It has generated a multitude of exceptions which threaten, at times, to defeat the rule entirely. This appeal confronts us with the question of whether one such exception should be dramatically expanded to create, in effect, a "white-collar" nullification of the rule.

Santa Rosa Junior College (college) challenges a decision of the Workers' Compensation Appeals Board (board) awarding death benefits to JoAnne Smyth, widow of a community college instructor who was killed in an automobile accident on his way home from the campus. At issue is the applicability of the going and coming rule to school teachers who regularly take work home. If, in such cases, the home may be fairly regarded as a "second jobsite," the rule does not apply and injuries sustained en route are compensable. If the fact that the employee regularly takes work home does not establish the home as a second jobsite, compensation is barred.

■ We conclude that—unless the employer requires the employee to labor at home as a condition of the employment—the fact that an employee regularly works there does not transform the home into a second jobsite for purposes of the going and coming rule.

### Facts

Joseph Smyth was a mathematics instructor and head of the mathematics department at the college. About 6 p.m. on March 16, 1982, he was killed in an accident while driving his personal automobile home from work. His home was located in Ukiah, about 60 miles from the Santa Rosa campus. The family had moved to Ukiah six years earlier for their own convenience: Mrs. Smyth worked in Ukiah, she had a "back problem," and the couple decided that she should be located close to home and to their children's schools.

---

[*]Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

It is undisputed that at the time of the accident Smyth had with him some student papers he intended to grade that evening. Indeed, Smyth regularly worked at home in the evenings. For several years before the accident, he stayed overnight in Santa Rosa once every two or three weeks and worked at home on some week nights. In 1981-1982, he assumed additional responsibilities as department head. In that school year, he worked late on campus once or twice per week, stayed overnight in Santa Rosa once or twice per week, and brought home one or two hours of work "about every night." At home, he worked in a section of the living room reserved for that purpose, where he kept duplicate copies of necessary books. The work usually consisted of grading papers or exams; occasionally, he would also prepare lesson plans or future class schedules at home. Mrs. Smyth testified that her husband worked at home rather than on campus because on campus, he was subject to interruption by students or other business, and, in addition, he wished to spend time with his family.

Smyth's habit of working at home in the evenings was not unusual for members of the college's faculty; working at home appears to have been the rule, not the exception. Patrick Boyle, one of Smyth's colleagues and a former department head, testified that he and many other instructors regularly took work home.[1] In his opinion, the work could not be completed during normal working hours because teachers were subject to interruption in their offices by students (both during the day and at night) and no suitable alternatives for uninterrupted work existed on campus.

Richard Giles, another of Smyth's colleagues, echoed these concerns about the persistent interruptions on campus, testifying that he also took work home four or five nights per week. With respect to the student interruptions, Giles considered it "tremendously important" to be accessible to students while on campus: "[T]here is a feeling of professionalism . . . and I think Joe Smyth . . . was more open to questions and working with students than any of the rest of us . . . ." He added that another reason he personally took work home was that by late afternoon he grew tired and felt the need for a break before continuing his duties.

Edmund Buckley, associate dean of instruction at the college, testified that the administration neither encouraged nor discouraged working at home. Noting that "it's common for many, many instructors to take work home," he stated that during his own four-year tenure as a departmental

---

[1]Boyle testified that when he became head of the department he carried home 60 percent of his teaching workload. As head of the department, he received no extra compensation and the work time increased because of the evening responsibilities of supervising and evaluating the night instructors.

head he had been able to avoid interruptions in his office "to some degree—not to a great degree." Buckley had occasionally worked in the library grading papers, a solution he considered "satisfactory" because he found "study carrels that nobody else knew about." He had never received any complaints from instructors to the effect that their working facilities on campus were inadequate.

William Wilbur, dean of business services, agreed that there was no rule against taking work home and that working at home is "common to all disciplines." He also stated that neither Smyth nor any other staff member received financial or other consideration to account for the distance and time of their commutes. He knew of no benefit to the employer by reason of the work being done at home rather than on campus.

An office was provided for each instructor at the college. Undisputed evidence shows that Smyth could have eliminated or reduced student interruptions by posting office hours. Moreover, the record shows—not surprisingly—that Smyth was also subject to interruption while working at home.

The workers' compensation judge concluded that Smyth's death did not occur in the course of employment. He found that Smyth had adequate facilities and sufficient time to complete his work on campus and that it was Smyth's choice to work at home.

Acting on a petition for reconsideration, a three-member board panel, by a two-to-one vote, held that the death arose out of and occurred during the course of employment. The board concluded that because of the nature of the work and the frequent interruptions from students and phone calls, Smyth was "essentially required to maintain a second worksite in his home."[2] It reasoned that in this case "[t]he work at home was more a matter of business necessity than of personal convenience." Accordingly, the board awarded death benefits to Mrs. Smyth.

The college seeks review of the board's decision.

---

[2]"It appears, moreover, that this was in effect an implied term or condition of the employment contract. Testimony by other instructors indicates that the harried conditions in the offices on campus forced them to take their work home in order to complete it. Thus, the accident which occurred while the decedent was on his way home is compensable since his home was in effect a second worksite due to the fact that he was implicitly required to work at home." As will appear, we disagree with the board's determination that because of his heavy workload and the conditions of his workplace, Smyth was "required" to use his home as a second jobsite. Insofar as this determination represents a legal conclusion, it reflects a misapplication of controlling legal principles; insofar as the determination can be construed as a finding of fact, it is not supported by substantial evidence. (See *post*, pp. 355-357.)

## DISCUSSION

As the employer, the college is liable for the death benefits provided under the act only if Smyth's accident arose "out of and in the course of the employment" and if certain "conditions of compensation" were present.[3] (Lab. Code, § 3600.) ▮ We note at the outset that where, as here, there is no real dispute as to the facts, "the question of whether an injury was suffered in the course of employment is one of law and a purported finding of fact on that question is not binding on an appellate court." (*Reinert* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 349, 358 [294 P.2d 713]; see *Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 864 [101 Cal.Rptr. 105, 495 P.2d 433].)

We originally adopted the going and coming rule as one means of determining when an accident should be treated as an "accident arising out of and in the course of the employment." In *Ocean Accident etc. Co.* v. *Industrial Acc. Com.* (1916) 173 Cal.313 [159 P. 1041], the issue was whether a fatal accident suffered by a seaman as he attempted to reboard his ship after going ashore for personal reasons arose out of and occurred within the scope of his employment. Observing that the language of the act was identical to that of the English Workmen's Compensation Act (enacted in 1897), we looked to English case law for guidance. We concluded that "there are excluded from the benefits of the act all those accidental injuries which occur while the employee is going to or returning from his work . . . ." (173 Cal. at p. 322.)

Of course, we recognized that in the broadest sense an injury occurring on the way to one's place of employment is an injury "growing out of and incident to his employment," since "a necessary part of the employment is that the employee shall go to and return from his place of labor." (*Ibid.*) However, the right to an award is founded not "upon the fact that the injury grows out of and is incidental to his employment," but, rather, "upon the fact that the *service* he is rendering at the time of the injury grows out of and is incidental to the employment." (Italics original.) Therefore, we rea-

---

[3]In relevant part, Labor Code section 3600 reads: "(a) Liability for the compensation provided by this division . . . [shall] exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur: [¶] (1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division. [¶] (2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment. [¶] (3) Where the injury is proximately caused by the employment, either with or without negligence."

soned, "an employee going to and from his place of employment is not rendering any service, and begins to render such service only when [arriving at the place of employment]." (*Ibid.*) The rule has also been explained on the theory that "ordinarily the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work." (*Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 66 Cal.2d 944, 947 [59 Cal.Rptr. 622, 428 P.2d 606], quoting *Kobe* v. *Industrial Acc. Com.* (1950) 35 Cal.2d 33, 35 [215 P.2d 736].)

The going and coming rule resulted from the type of judicial line-drawing frequently required when construing and applying vague or open-ended statutory provisions. With its genesis in the practical need of drawing a "line" delineating an employee's "scope of employment," the rule was necessarily arbitrary, later explanations of its underlying rationale notwithstanding. California courts—manifesting much unease both in applying as well as in refusing to apply the rule—have recognized this essential arbitrariness and its potential harshness.

Indeed, it has become customary for courts to introduce each new discussion of the rule with a litany of reservations and qualifications: the rule is a "slippery concept"[4] which is "riddled with exceptions";[5] "[m]uch criticized and subject to numerous exceptions, the rule is difficult to apply uniformly";[6] it has had a "tortuous history";[7] neither the rule nor its exceptions are susceptible to "automatic application";[8] each case "must be adjudged by the facts which are peculiarly its own";[9] "application of the rule has been especially difficult in 'borderline cases' . . . ."[10] Finally, most attempts to exorcise or anesthetize the rule depart from or culminate in an invocation of Labor Code section 3202, which provides that the act "shall be liberally construed by the courts with the purpose of extending [its] benefits for the protection of persons injured in the course of their employ-

---

[4]*Safeway Stores, Inc.* v. *Workmen's Comp. App. Bd.* (1980) 104 Cal.App.3d 528, 535 [163 Cal.Rptr. 750].

[5]*Bramall* v. *Workmen's Comp. App. Bd.* (1978) 78 Cal.App.3d 151, 156 [144 Cal.Rptr. 105].

[6]*Price* v. *Workmen's Comp. App. Bd.* (1984) 37 Cal.3d 559, 565 [209 Cal.Rptr. 674, 693 P.2d 254], citing *Parks* v. *Workmen's Comp. App. Bd.* (1983) 33 Cal.3d 585, 589 and footnote 4 [190 Cal.Rptr. 158, 660 P.2d 382]; *Hinojosa* v. *Workmen's Comp. App. Bd.* (1972) 8 Cal.3d 150, 156 [104 Cal.Rptr. 456, 501 P.2d 1176]; *Bramall, supra,* at page 156.

[7]*Hinojosa, supra,* 8 Cal.3d at page 156.

[8]*Ibid.*

[9]*Makins* v. *Industrial Acc. Com.* (1926) 198 Cal. 698, 703 [247 P. 202, 49 A.L.R. 411].

[10]*Cal. Cas. Ind. Exch.* v. *Ind. Acc. Com. (Cooper)* (1943) 21 Cal.2d 751, 754 [135 P.2d 158]. See *Parks, supra,* 33 Cal.3d at page 588. This quality is hardly peculiar to the going and coming rule.

ment." Having shown that years of case law have properly eviscerated the going and coming rule, courts then go on to explain why the particular facts of the case fall into one of the many established exceptions to the rule.

The trouble is that the facts in this case do not fit convincingly into any of the established limitations or exceptions. Because Smyth's accident occurred miles away from the Santa Rosa campus, exceptions to the "premises line" doctrine[11] cannot reasonably be invoked to render the going and coming rule inapplicable. Smyth received no special or additional compensation for his commute; therefore, the "wage payment or travel expense" exception cannot apply.[12] The college did not require Smyth to furnish his own vehicle on the job. If it had, the "required transportation" exception would have curtailed application of the going and coming rule. (*Smith* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 814, 820 [73 Cal.Rptr. 253, 447 P.2d 365]; *Hinojosa, supra,* 8 Cal.3d at p. 160.)

Smyth's employment at the college in no way created a "special risk." Under that exception, an injury is compensable if, before entry upon the premises, an employee suffers injury from a special risk causally related to employment. (*Gen. Ins. Co.* v. *Workmen's Comp. App. Bd. (Chairez)*

---

[11]For purposes of applying the going and coming rule, the employment relationship begins when the employee enters the employer's premises. We have reaffirmed the "premises line" rule, stating that it "has the advantage of enabling courts to ascertain the point at which employment begins—objectively and fairly." (*Gen. Ins. Co.* v. *Workmen's Comp. App. Bd. (Chairez)* 16 Cal.3d 595, 599 [128 Cal.Rptr. 417, 546 P.2d 1361].) However, injuries sustained in close proximity to the employer's premises may, in fact arise out of the employment, especially when the accident occurs in the parking lot used by employees or on public property immediately adjacent to the workplace. Recognizing this, we have defined the course of employment to include a "reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done." (*Lewis* v. *Workmen's Comp. App. Bd.* (1975) 15 Cal.3d 559, 561 [125 Cal.Rptr. 353, 542 P.2d 225], quoting *Cal. Cas. Ind. Exch.* v. *Ind. Acc. Com., supra,* 21 Cal.2d 751, 754.) Where the employment itself creates a danger to employees entering or leaving the premises, we have posited a "field of risk" or "zone of danger," the extent of which varies from case to case, depending on the degree to which the employer's conduct contributes directly as a proximate cause of the employee's injuries. (*Parks, supra,* at p. 592. See, also, *Greydanus* v. *Ind. Acc. Com.* (1965) 63 Cal.2d 490, 493 [47 Cal.Rptr. 384, 407 P.2d 296]; *Pac. Ind. Co.* v. *Ind. Acc. Com. (Henslick)* (1946) 28 Cal.2d 329, 338 [70 P.2d 18].) This line of cases stems from one of the earliest attempts to circumvent or soften *Ocean Accident.* (See *Judson Mfg. Co.* v. *Ind. Acc. Com.* (1919) 181 Cal. 300, 302 [184 P. 1] ["It would be a harsh and indefensible rule that would withhold compensation from an employee engaged in traversing a dangerous pathway in his employer's building on his way to his own particular place of work therein, on the ground that he had not yet entered upon the real work of his employment"].)

[12]See *Kobe, supra,* 35 Cal.2d at page 35; *Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 962 [88 Cal.Rptr. 188, 471 P.2d 988]. The fact that an employer compensates an employee for the commuting time implies an agreement that the employment relationship shall continue during the period of going and coming.

(1976) 16 Cal.3d 595, 600 [128 Cal.Rptr. 417, 546 P.2d 1361].) "The facts that an accident happens upon a public road and that the danger is one to which the general public is likewise exposed, however, do not preclude the existence of a causal relationship between the accident and the employment if the danger is one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree." (*Freire* v. *Matson Nav. Co.* (1941) 19 Cal.2d 8, 12 [118 P.2d 809].) In *Chairez,* we devised a two-prong test to determine applicability of the special risk exception: the exception will apply (1) if "but for" the employment the employee would not have been at the location where the injury occurred and (2) if "the risk is distinctive in nature or quantitatively greater than risks common to the public." While the circumstances of Smyth's accident certainly meet the first requirement (i.e., the accident would not have occurred "but for" the employment), his employment at the college did not subject him to a risk which was distinct or quantitatively greater than that common to the public generally.

■ We also find no merit in the suggestion that Smyth's accident occurred while he was on "special mission" or "errand" which was reasonably undertaken at the request or invitation of his employer.[13] In relation to his routine duties, there was nothing "extraordinary" about his commute on March 16, 1982. The accident occurred, quite simply, during his regular commute between the college and his home in Ukiah. Smyth's practice of taking work home with him in the evenings cannot convert a routine commute into a "special mission."

Finally, we have recognized a "home as a second jobsite" exception to the going and coming rule. It is this exception—or an extension of it—which the board used in concluding that the rule does not preclude compensation in this case. ■ Generally, "[w]ork done at home may exempt an injury occurring during a regular commute from the going and coming rule if circumstances of the employment—and not mere dictates of convenience to

---

[13]"An injury suffered by an employee during his regular commute is compensable if he was also performing a special mission for his employer." (*Chairez, supra,* 16 Cal.3d at p. 601.) The employee's conduct is "special" if it is "extraordinary in relation to routine duties, not outside the scope of employment" (*Schreifer* v. *Ind. Acc. Com.* (1964) 61 Cal.2d 289, 295 [38 Cal.Rptr. 352, 391 P.2d 832]. See, also, *L.A. Jewish etc. Council* v. *Ind. Acc. Com.* (1949) 94 Cal.App.2d 65, 68 [209 P.2d 991].) The closely related "dual purpose" rule also appears inapplicable. In *Lockheed Aircraft Corp.* v. *Ind. Acc. Com.* (1946) 28 Cal.2d 756 [172 P.2d 1], we held that "where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly or indirectly could he have been serving his employer." The dual purpose situation usually arises when the employees combine their personal business with a "special errand" or "mission."

the employee—make the home a second jobsite. If the home becomes a second business situs, the familiar rule applies that injury sustained while traveling between jobsites is compensable." (*Wilson* v. *Workmen's Comp. App. Bd.* (1976) 16 Cal.3d 181, 184 [127 Cal.Rptr. 313, 545 P.2d 225].) We noted that the commute does not constitute a business trip if the employees work at home for their own convenience "serving the employee's own convenience in selecting an off-premise place to work is a personal and not a business purpose." (*Ibid.*)

The facts underlying Smyth's claim to a "home as a second jobsite" exception closely resemble those advanced by the applicant in *Wilson*. Like Smyth, Wilson was a teacher. She was injured in an automobile accident while driving to her school. Instructors at her school commonly graded papers and planned lessons outside class periods or at home in the evening, as the class schedule did not set aside a specific period for these activities. Although teachers could complete class preparation at school, they usually chose to work at home for their own convenience. At the time of the accident, Wilson's car contained miscellaneous supplies for use in her art class, materials graded at home the previous evening, and her teaching manual and other books.

In *Wilson,* we affirmed the board's determination that the applicant's home did *not* constitute a second jobsite warranting exemption from the going and coming rule.[14] Her explicit job requirements demanded only that she report to the school premises, and "[h]er employer's implicit requirement to work beyond classroom hours did not require labor at home." (*Id.,* 16 Cal.3d at pp. 184-185.)

Applicant in the present case contends that the board properly concluded that it was an implied term or condition of Smyth's employment contract that he take work home in the evenings—that it was "more a matter of business necessity than of personal convenience."[15] On this basis, the board distinguished *Wilson,* wherein there was no claim that school facilities were not sufficient to allow completion of the required work.

It is not entirely clear whether the board's determination that Smyth was "implicitly required" to use his home as a second jobsite represents a con-

---

[14]The dissent in *Wilson* was based on the "transportation exception" to the going and coming rule, *not* on the second jobsite issue. The transportation exception is not involved in the instant case.

[15]"It would have been virtually impossible for the decedent to have completed all of his work in his office at campus due to frequent interruptions, by telephone calls and students seeking assistance."

clusion of law or a finding of fact. Much of the language used by the board suggests that it was a legal conclusion which the board drew from the uncontradicted evidence in the record: *"The picture that emerges from the testimony* of the various witnesses is that the decedent was *essentially required* to maintain a second worksite in his home" (opn. at p. 5); ". . . *we conclude that the decedent was implicitly authorized* to perform part of his duties at home . . ." (opn. at p. 7); "Clearly this was an accepted practice. *It appears* moreover, *that this was in effect an implied term or condition* of the employment contract" (opn. at p. 7); "his home was *in effect a second worksite* due to the fact that he was *implicitly required* to work at home" (opn. at p. 7). (Italics added.)

These passages suggest that the board concluded that where an employee works long hours and is subject to interruption at the workplace and where fellow employees commonly take work home with the knowledge and implicit permission of the employer, general principles of workers' compensation law establish that the employee is, as a matter of law, "implicitly required" to use his home as a second jobsite. There is no authority, however, to support such a proposition. *Wilson* makes quite clear that a home does not become a second jobsite simply because one's employment requires long working hours and the employer knows that the employee frequently brings work home. As we observed in *Wilson,* "[t]he contemporary professional frequently takes work home. There, the draftsman designs on a napkin, the businessman plans at breakfast, the lawyer labors in the evening. But this hearthside activity—while commendable—does not create a white collar exception to the going and coming rule." (16 Cal.3d at p. 185.) Thus, to the extent that the board's "implicit requirement" determination amounts to a legal conclusion, it cannot be reconciled with *Wilson.*

Furthermore, we find little to commend the white-collar exception which we refused to establish in *Wilson.* It would, a fortiori, extend workers' compensation benefits to workers injured in the homes themselves, as well as en route to and from their regular work places. Ironically, a white collar exception would probably not diminish the controversy surrounding the going and coming rule; it would merely shift it to a new and equally arbitrary "line" defining the "course of employment."[16] Would the fact that

---

[16]The going and coming rule and its many exceptions are all "arbitrary"—judicial responses to the practical necessity of establishing guidelines for use in determining whether a worker's injury arose out of and in the course of employment. Like all arbitrary rules, they are, in borderline cases, widely perceived as unfair. (See, e.g., *Hinojosa, supra,* in which we noted a number of commentaries critical of the going and coming rule. (8 Cal.3d at p. 156, fn. 5.) Most of those commentaries focused on the arbitrariness of the rule.) As one commentator observed, "[i]t is a familiar problem in law, when a sharp, objective, and

an employee regularly took work-related materials home suffice to create a second jobsite, or would the employee have to show that he *actually* worked at home? How would we treat employees who work at home on some evenings but not on others, depending on their personal inclinations? And, of course, new problems of the "frolics and detours" variety would plague the new exception.

On the other hand, insofar as the board's determination that the employee was "implicitly required" to maintain his home as a second jobsite was intended as a finding of fact, it is simply not supported by substantial evidence in the record. Although the evidence shows that most faculty members took work home and that the employer was well aware of this practice, there is nothing in the record which indicates that faculty members were *required*—implicitly or otherwise—to work at home rather than on campus. Rather, the evidence reveals that professors worked at home by choice, not because of the dictates of their employer. On this record, there is no room for a factual finding that working at home was a condition of Smyth's employment.

Therefore, applying established "going and coming rule" principles and precedents, we conclude that the board erred in awarding compensation. We could, of course, abrogate the rule or expand any of its exceptions, for they have evolved simply as "the product of judicial gloss on the statutory conditions of compensability." (*Safeway Stores, supra,* 104 Cal.App.3d at p. 535.) However, they have become an important part of our workers' compensation law. Although the Legislature has enacted significant changes in the Workers' Compensation Act during the last 70 years, it has not disturbed the going and coming rule or its judicially created exceptions. Unless the judiciary can devise rules which are fairer, less arbitrary, less problematic in application, and more clearly consistent with the public policies

---

perhaps somewhat arbitrary line has been drawn . . . to encounter demands that the line be blurred a little to take care of the closest cases. For example, one writer says that there is no reason in principle why states should not protect employees 'for a reasonable distance' before reaching or after leaving the employer's premises. [Fn. omitted.] This, however, only raises a new problem because it provides no standard by which the reasonableness of the distance can be judged. It substitutes the widely varying subjective interpretation of 'reasonable distance' by different administrators and judges for the physical fact of a boundary line. At the same time, it does not solve the original problem, because each time the premises are extended a 'reasonable distance,' there will inevitably arise new cases only slightly beyond that point—and the cry of unfairness of drawing distinctions based on only a few feet of distance will once more be heard." (1 Larson, Workmen's Compensation Law, § 15.12(a).) While the going and coming rule (and its exceptions) can hardly be considered to be as "sharp" and "objective" as the premises-line doctrine which Larson was defending, we believe that his reasoning is applicable to the issues in this case.

underlying the act, it should leave to the Legislature the major task of restructuring the rules governing employer liability.[17]

Smyth's accident occurred during a routine commute from college to home. We conclude that the facts of this case are essentially indistinguishable from those of *Wilson* v. *Workmen's Comp. App. Bd.* and that our holding in *Wilson* should govern here.

The decision of the board is annulled.

Mosk, J., Broussard, J., Grodin, J., and Lucas, J., concurred.

**REYNOSO, J.**—I respectfully dissent. Courts have fashioned the "going and coming" rule to aid in determining whether an injury occurred "in the course of the employment." (Lab. Code, § 3600; *Parks* v. *Workers' Comp. App. Bd.* (1983) 33 Cal.3d 585, 588 [190 Cal.Rptr. 158, 660 P.2d 382].) In applying this rule, courts have held "non-compensable the injury that occurs during a local commute enroute to a fixed place of business at fixed hours in the absence of special or extraordinary circumstances." (*Hinojosa* v. *Workmen's Comp. App. Bd.* (1972) 8 Cal.3d 150 at p. 157 [104 Cal.Rptr. 456, 501 P.2d 1176].) By narrowly focusing on the rule and its numerous exceptions, however, the majority in this case has lost sight of the primary statutory test. (Cf. *id.*, at p. 156, fn. 5.) Since Smyth's accident clearly occurred in the course of his employment, it should be compensable.

The Legislature mandated in Labor Code section 3202 that courts liberally construe the Workers' Compensation Act "with the purpose of extending [its] benefits for the protection of persons injured in the course of their employment." In determining whether the going and coming rule applies to bar compensation, any reasonable doubt must be resolved in the employee's favor. (*Cal. Cas. Ind. Exch.* v. *Ind. Acc. Com.* (1943) 21 Cal.2d 751, 760 [135 P.2d 158].) In part, courts developed exceptions to the going and coming rule to ameliorate its harsh and arbitrary effect. Moreover, this court has concluded that the rule is not a formula of automatic application and that each case should be adjudged on its own facts. (*Hinojosa, supra,* 8 Cal.3d at pp. 155-156; *Makins* v. *Ind. Acc. Com.* (1926) 198 Cal. 698, 703 [247 P. 202, 49 A.L.R. 411].)

Smyth's accident during his Ukiah commute should be compensable because it was a dual purpose trip, serving both his personal purpose of mak-

---

[17]See Bouret, *The California Going and Coming Rule: A Plea for Legislative Clarification* (1979) 15 Cal.Western L.Rev. 116.

ing a trip home and the business purpose of reaching a second jobsite. In such a situation, the court should look for three principal indicia to establish a compensable injury: "the quantity and regularity of work performed at home; the continuing presence of work equipment at home; and special circumstances of the particular employment that make it necessary and not merely personally convenient to work at home." (1 Larson, The Law of Workmen's Compensation (1985) § 18.32 at p. 4-309.)

Here, testimony demonstrated that Smyth brought home one or two hours of work almost every night. In addition, part of the Smyths' living room was reserved as his work place, in which he kept duplicate copies of his books. Finally, it was more than a matter of personal convenience to work at home. To be an effective teacher, Smyth needed to be accessible to students while in his office. Frequent interruptions by students, however, made it impossible for him to complete his preparatory work on campus. Furthermore, Smyth served as head of the mathematics department. In this capacity, he assumed the responsibility of supervising and evaluating the night instructors as well as the burden of administrative work, which included receiving all telephone calls for the department. This evidence supports the board's finding that Smyth's home was a second jobsite.

The majority mistakenly relies on *Wilson* v. *Workmen's Comp. App. Bd.* (1976) 16 Cal.3d 181 [127 Cal.Rptr. 313, 545 P.2d 225], to bar Smyth's claim. In *Wilson,* however, the board specifically found that (1) applicant's home was not a second jobsite because her activities outside school hours were matters of personal choice, and (2) only convenience motivated applicant's car trip. (*Id.,* at p. 183.) There was no claim that school facilities were insufficient to permit completion of her preparation for classes as in this case. (Compare *Wilson* with *Bramall* v. *Workers' Comp. App. Bd.* (1978) 78 Cal.App.3d 151 [144 Cal.Rptr. 105] [court allows recovery under second jobsite exception when evidence demonstrated that applicant could not properly complete her work in the office after hours].)

Smyth's accident should be compensable because it happened during a commute to his second jobsite. This trip involved "an incidental benefit to the employer, not common to commute trips by ordinary members of the work force" (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956 at p. 962 [88 Cal.Rptr. 188, 471 P.2d 988]), because Smyth's work at home enabled him to maintain an open door policy in his office for his students' benefit. The majority's denial of compensation in this case will lend cre-

dence to the perception that the going and coming rule is arbitrary and unfair.

Bird, C. J., concurred.