FIORE DiCOSTANZO, PETITIONER-APPELLANT, CROSS-RESPONDENT v. MATTHEWS CONSTRUCTION COMPANY, RESPONDENT-RESPONDENT, CROSS-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 11, 1970—Decided May 28, 1970.

Before Judges KILKENNY, LABRECQUE and LEONARD.

*Mr. Robert A. Gladstone* argued the cause for appellant Fiore DiCostanzo (*Messrs. Pellettieri and Rabstein,* attorneys).

*Mr. Fred R. Daniels* argued the cause for respondent and cross-appellant (*Mr. John W. Taylor,* attorney).

The opinion of the court was delivered by

KILKENNY, P. J. A. D. This is a workmen's compensation case. There is an appeal by petitioner and a cross-appeal by respondent from the judgment of the County Court fixing the amount awarded petitioner for permanent disability. Petitioner claims that he is entitled to a greater percentage; respondent maintains that a lesser percentage should have been fixed.

There is no dispute as to the happening of an accident on August 4, 1967 while petitioner, in the course of his employment as a laborer with respondent, was taking wooden cases, weighing about 250 to 300 pounds and four feet high and three feet wide, off a truck and placing them on a wagon. These cases were picked up manually, a cart being used to take them to a wagon. Petitioner was on one side of a case and was lifting that side by himself when he felt a sharp piercing pain in the lower part of his back. Concededly, petitioner suffered temporary and permanent disability. The issue involved below and here is the *quantum* of that permanent disability and the correctness of the County Court's evaluation is now before us for review.

The judge of compensation determined that petitioner's permanent disability "is orthopedic, neuropsychiatric and phlebothrombosis in nature, for residuals of orthopedic injuries to the back, a severe strain of back, a disc syndrome, an anxiety reaction and phlebothrombosis." He concluded the extent of permanent disability to be "22½% of total, 5% of total being for the residual effects and damage caused by the phlebothrombosis, 10% of total being for the orthopedic injuries to the back and 7½% of total for the neuropsychiatric disability."

In its appeal to the County Court respondent challenged that part of the Division's determination awarding petitioner partial permanent disability benefits for disability which "was neuropsychiatric and phlebothrombosis in nature." The County Court decided that "the award made in the Division of Workmen's Compensation should be sustained with respect to that part thereof awarding 7½% of partial permanent disability for a neuropsychiatric disability but modified and reversed as to the award of 5% of partial permanent disability for the residual effects and damage caused by the phlebothrombosis."

The original award of 10% of total for the orthopedic injuries to the back has not been challenged on this appeal by either party. Petitioner's appeal to this court seeks a

reversal of that part of the County Court judgment which reversed the Division's award of 5% partial permanent disability for phlebothrombosis. Respondent's cross-appeal contests the award of 7½% partial permanent for the neuropsychiatric disability.

## I. Neuropsychiatric Disability

Both the Division and the County Court concurred in finding petitioner entitled to an award of 7½% of total disability by reason of the neuropsychiatric residuals occasioned by this accident. Based upon the record as a whole, we find sufficient credible and substantial evidence to support this concordant determination. We affirm this aspect of the case under the guidelines laid down in *Close v. Kordulak Bros.*, 44 *N. J.* 589 (1965).

## II. Phlebothrombosis Disability

The Division and the County Court disagreed as to this aspect of the case. The Division allowed, as part of its award to petitioner, 5% of total disability for the residual effects and damage caused by the phlebothrombosis. The County Court reversed as to this award of 5% for the residual effects and damage caused by the phlebothrombosis.

The accident happened on August 4, 1967. After a sleepless night, petitioner saw a Dr. Nazzaro the next day. The doctor, after hearing the history from the patient, advised him to sleep on the floor that evening. On the next day, August 6, petitioner awoke with severe and excruciating pain. He was thereupon admitted to Princeton Hospital, where he remained until August 13, 1967. The final diagnosis at the hospital was acute lumbosacral strain, herniation at the left of the 5th lumbar vertebra.

After his release from the hospital, he noticed that his right leg began to swell. He was again admitted to the hospital on August 16, 1967. This second admission ended

on August 23, 1967. To the previous final diagnosis, there was added phlebothrombosis of the right leg.

As usual, there was a conflict in the medical testimony. Dr. Freymouth, testifying for petitioner, found causal relationship. Dr. Scheuerman, for the respondent, differed. Also, admitted by stipulation, were the reports of other doctors.

The only medical evidence presented regarding the residual effects and damage caused to the right leg by phlebothrombosis is contained in the reports of Dr. Silberner and Dr. Urbaniak. Petitioner was asked at the compensation hearing, "What complaints do you have with the right leg now?" He answered, "For now it seems to be all right." Dr. Urbaniak's diagnosis seems to have been based on petitioner's complaints at the time of an examination on October 18, 1968. But he gave no basic facts for his determination as to permanent disability.

Dr. Silberner's report contained comments to the effect that, "At the present time, the patient has no symptomatology referrable to the thrombophlebitis. Likewise, he has no objective evidence of the thrombophlebitis." However, he stated that "an individual who has suffered a phlebitis of the vein is more prone to develop a subsequent phlebitis than an individual who has not suffered such an injury." According to the doctor, *additional precautionary care* will have to be *taken* to prevent a recurrence of the thrombophlebitis." The doctor concluded in his report that petitioner's damage *"makes him more liable to a recurrence of the phlebitis* than if he had never had this before." (Emphasis added). Upon this basis, the doctor estimated that petitioner had suffered 5% of total disability as the result of the irreversible damage which makes him "more prone" to a recurrence of phlebitis than if he had never suffered such an injury before.

The judge of compensation obviously accepted this medical opinion in awarding the additional 5% for the phlebothrombotic residuals. The County Court disagreed, find-

ing nothing in the statute or case decisions to permit a recovery of a disability award for the reasons set forth in Dr. Silberner's report. In support of its conclusion, reversing the Division's award of 5% as to the phlebothrombotic aspect of the case, the County Court cited *Burbage v. Lee*, 87 *N. J. L.* 36 (Sup. Ct. 1915); *Heidel v. Wallace & Tiernan, Inc.*, 37 *N. J. Super.* 522, 528 (Cty. Ct. 1955), affirmed *o. b.* 21 *N. J.* 335 (1956).

*Burbage v. Lee* held that "the term 'disability' is not restricted to such disability as impairs earning power at the particular occupation, but embraces any loss of physical function which detracts from the former efficiency of the body or its members in the ordinary pursuits of life." 87 *N. J. L.* at 38. *Heidel v. Wallace & Tiernan, Inc.* cited *Burbage v. Lee* with approval. 37 *N. J. Super.* at 528. *Heidel* held that loss of wage-earning capacity is not the determinant. "Disability" is not used in its narrow sense, but rather in broad interpretation "connoting loss of any physical function or any impairment to the worker as a physiological unit." *Ibid.* In *Burbage,* the worker became permanently lame. In *Heidel,* his right lower arm was amputated.

Petitioner argues that increased *susceptibility* to an active disease, caused by a compensable accident, is an impairment of the worker as a physiological unit and gives rise to a compensable permanent disability claim under our workmen's compensation law. Respondent's position is that petitioner does not suffer from any permanent disability by reason of phlebothrombosis.

Petitioner conceded that he has no complaints *now* with the right leg. "For now it seems to be all right." Dr. Silberner reported that, at the present time, petitioner "has no symptomatology referrable * * * or objective evidence of the thrombophlebitis." Does mere "proneness to a recurrence" of phlebitis, which may never happen, justify a 5% of total permanent disability award *at this time?* That is the question to be answered.

At the time of the compensation hearing on December 9, 1968, petitioner was 41 years old. Dr. Scheuerman described him as a thin man, weighing 126 pounds, and standing five feet four inches tall. In all, petitioner had remained out of work three months following his accident. He then returned to work in the same capacity on October 29, 1967. At the December 9, 1968 hearing petitioner was still working for respondent as a shop steward. He testified that his right leg no longer caused him difficulty. There has been no recurrence of the phlebitis condition, although almost three years have elapsed since the August 4, 1967 accident. There are, as noted above, no objective or other symptoms of this disease at the present time. At most, there *may* be a recurrence; but then again, there *may never* be a recurrence.

■ The criterion for determining permanent disability in New Jersey is "whether the worker has lost any physical function detracting from his body's efficiency" in the ordinary pursuits of life. *Heidel v. Wallace & Tiernan, Inc., supra,* 37 *N. J. Super.* at 528, affirmed 21 *N. J.* 335. Does the *potential* impairment to the worker as a physiological unit justify a *present* award for a disability which does not now exist?

■■ An award of compensation cannot rest upon imagination, surmise or conjecture, or upon speculation. *Ligenza v. White Foundry Co., Inc.,* 136 *N. J. L.* 436, 440 (Sup. Ct. 1948). The award is based upon petitioner's disability as of the time of the determination. An injured workman may be awarded 75% of total permanent disability for a traumatic heart condition resulting from a work-connected accident. His obvious proneness to increased disability thereafter does not warrant a further award because of that **potentiality**. It is when the potential becomes actual that an application may be made for an increase in the award or further benefits. See *McAllister v. Bd. of Ed., Kearny,* 79 *N. J. Super.* 249 (App. Div. 1963), affirmed 42 *N. J.* 56 (1964). Our Workmen's Compensation Act, *N. J. S. A.*

34:15–27, authorizes review and increase of an award within two years from the date the injured person last received a payment.

██ The fact, that a former injury may have produced a weakness in the employee's body making him more susceptible to further injury than would a normal individual, does not necessarily in itself establish a partial permanent disability of a compensable nature. Such an employee might never sustain a further injury, in which case he never will be disabled. *M. & M. Realty Co. v. Industrial Commission,* 267 *Wis.* 52, 64 *N. W.* 2d 413, 419 (Sup. Ct. 1954).

As stated in 99 *C. J. S. Workmen's Compensation* § 173, at 596:

Weakened resistance, one form of which is susceptibility to disease, can never, by itself, result in a compensable injury; and the fact that an injury may have produced a weakness in an employee's body making him more susceptible to further injury than a normal individual would be does not necessarily in itself establish a partial permanent disability of a compensable nature.

See *Santini v. Levin,* 110 *Conn.* 248, 147 *A.* 680 (Sup. Ct. Err. 1929), holding "Weakened resistance, one form of which is susceptibility to disease, can never, by itself, result in a compensable injury * * *." (147 *A.* 681).

██ We conclude that disability to be compensable may not be a mere potential future possibility. Such was the situation here with reference to the mere possibility of a recurrence of thrombophlebitis at some speculative future time.

Accordingly, the judgment of the County Court is in all respects affirmed.