222 N.J. Super. 530 (1988)
537 A.2d 737
ANE J. KOZINSKY, PETITIONER-RESPONDENT,
v.
EDISON PRODUCTS CO., RESPONDENT-RESPONDENT, AND SOMERSET COUNTY HEAD START, RESPONDENT-APPELLANT, AND MAYFAIR SUPERMARKET, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1987.
Decided February 9, 1988.
*531 Before Judges R.S. COHEN and LANDAU.
Robert Silver argued the cause for appellant Somerset County Head Start (Michals, Wahl, Silver & Leitner, attorneys; Robert Silver, on the brief).
George J. Kenny argued the cause for respondent Mayfair Supermarket (Connell, Foley & Geiser, attorneys; George J. Kenny, of counsel; George J. Kenny and Karen Painter Randall, on the brief).
William F. Perry argued the cause for respondent Edison Products Co. (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; William F. Perry, on the brief).
No brief was filed on behalf of respondent Ane J. Kozinsky.
The opinion of the court was delivered by LANDAU, J.A.D.
*532 This is an appeal by one employer, Somerset County Head Start (Head Start), from a judgment entered in the Division of Workers' Compensation in favor of Ane J. Kozinsky, apportioned equally against Mayfair Supermarket (Mayfair), and two successive employers, Somerset County Head Start (Head Start) and Edison Products, Inc. (Edison).
The Compensation Judge believed that it was appropriate to apportion the contributive share equally among these employers, under the theory of Quinn v. Automatic Sprinkler Co., 50 N.J. Super. 468, 480 (App.Div. 1958), and a recent unreported opinion of this court. Appellant Head Start argues that there was an insufficiency of medical evidence to show occupational aggravation of an injury suffered by Kozinsky while working at Mayfair and that an employer should be liable only for the degree of aggravation shown to be attributable to its work by reasonable medical or lay evidence. Edison, the non-appealing respondent, filed a brief urging that we consider any recurrence of symptoms at the subsequent employment to be "innocent aggravations" of the original injury under Selak v. Murray Rubber Co., 8 N.J. Misc. 838 (Sup.Ct. 1930) and Hartman v. Federal Shipbuilding & Dry Dock, Co., 11 N.J. Super. 611 (Cty.Ct. 1951).
The initial compensation claim was filed against Mayfair alleging an injury and consequent disability arising from a fall in a meat locker on January 27, 1983. According to Kozinsky's physician, the fall rendered symptomatic a previously asymptomatic congenital back condition. Kozinsky notified promptly Mayfair, which refused to sanction the chiropractic treatment she initially secured. In June 1983, she entered a course of treatment with a medical physician, Dr. Van Horn, about the same time as she stopped working for Mayfair. From June to July 1983 she worked 10 hours a day as a nail polish packer with a nonparty. In September 1983, after having received authorization from Mayfair to secure a back brace prescribed *533 by Dr. Van Horn in June, Kozinsky commenced what proved to be a six week employment with Head Start. During this employment she wore the back brace, received physical therapy three times a week, and was under the continued care of Dr. Van Horn.
Kozinsky initiated a compensation claim against Head Start contending that repeated bending and lifting of small children associated with her job aggravated the earlier back injury suffered in January. The proofs established no specific incidents on the job identified as causing pain. On recommendation of Dr. Van Horn, Kozinsky discontinued employment with Head Start at the end of October 1983. Thereafter, she was recalled by Edison from layoff status which antedated the Mayfair employment. She worked at Edison as an assembler and "brazer" from December 1, 1983 to February 1984, when she filed for temporary disability. She later returned in June 1984 only to leave again because of back problems in December 1984. Kozinsky filed a compensation claim against Edison for aggravation of her injury.
The three compensation petitions were consolidated.
According to Kozinsky's undisputed testimony, she was no longer able to ski or to engage in other customary athletic activities following the fall at Mayfair in January 1983. Even standing, housework and modest activity brought on recurrence of the back symptoms first experienced after the Mayfair accident.
The following excerpts from Kozinsky's testimony are illuminating:
........
Q. You indicated in your earlier testimony that you would have periods of exacerbation or aggravation in your back where it would be worse than other times; is that correct?
A. Yes.

*534 Q. So that certain types of movement or prolonged standing or lifting or certain activities on your part would make your condition worse?
A. Yes.
Q. And then after there would be periods of rest. Then it would come back to where it was?
A. Well, I wouldn't say a period of rest. If I didn't do the same type of activities that caused the pain it would ease off, but if I had to keep doing the same thing, it would just be constant pain on and off while  you get used to the pains or you tried to.
Q. So that we have it clear, prior to January of 1983, you did not have this type of pain in your back?
A. No, I did not.
Q. Then you had the fall at the supermarket?
A. Yes.
Q. And then after that you would have periods of exacerbation where your back would get rather acute or severe as far as pain is concerned? Then you would be treated by Dr. Van Horn with physical therapy, et cetera?
A. Yes.
Q. And then as it would ease off and then if you went back to doing any type of work or certain motions, the pain would return again, is that correct?
A. Depending on the strenuous nature of what I was doing.
Q. Well, I think you indicated that if you just sit for an hour or sat for an hour you would have pains in your back.
A. After a certain period of time  after the original accident, yes.
Q. So that you didn't really have to do anything just so long  if you were forced to stand for a period of time this pain would come back to your back; is that correct?
A. Yes.
........
Q. And you indicated that your life had changed in the sense that prior to  I assume on January 27 of 1983, you were able to engage in certain sporting activities as tennis, skiing, et cetera?
A. Yes.
Q. Since that time you have not?
A. No.
Q. As I understand your testimony, your condition would get to a level point and then would worsen if you engaged in any type of strenuous activities, at least as far as you were concerned and then it would level off again and then come back again and come back where it was before?
A. Basically, yes.
Q. It never returned to normal the way it was prior to January of 1983?

*535 A. No, it has not.
........
Q. So that this history of an exacerbation or increase in the pain and th [sic] leveling off of the pain has been very similar since your accident in January of 1983, would that be a fair statement?
A. I believe so.
Neither the medical experts provided by Kozinsky, nor any of the respondents' medical experts were able to allocate the percentages of increased disability arising from the two subsequent employments. Indeed, they did not do so even in a general sense. Dr. Shaw, the only petitioner expert who testified as to the percent of total disability, was asked how much disability came from the accident and how much was added by the subsequent employments. He responded, "Unfortunately I did not have the privilege of examining her after the first accident and after the second or after the third and I could not separate those for you." Asked whether he was able to tell whether or not subsequent employment made the condition any worse than it was following the initial accident, Dr. Shaw responded, "I cannot separate the degree of disability here for you ..."
The trial judge specifically found that Dr. Van Horn noted in June 1983 that Kozinsky felt her condition had worsened since January 1983. This was prior to employment at Head Start and reemployment by Edison. He also found that in September 1983, Dr. Van Horn referred to Kozinsky's statement that she felt her condition had worsened. This was also prior to commencing work at Head Start. The Compensation Judge noted Dr. Van Horn's concession that his findings were subjective, but he correctly pointed out that the findings of tenderness on palpation of the back and restriction in spinal bending and lifting adequately fulfilled the requirement for objective medical recognition of disability. There was, however, nothing in Dr. Van Horn's objective findings to attribute to any of the *536 subsequent employments a substantial contribution to the disability of petitioner.
We note that the compensation judge found that it was
... medically probable from my evaluations of opinions by these doctors that the petitioner has a disability of 15 percent orthopedic in nature for lumbosacral sprain, superimposed on a preexisting quiescent low back pathology, that the condition became manifest as a result of the fall down at Foodtown [Mayfair] and that it was reinjured during the employments at Head Start and Edison Products.
He also found that although the medical experts could not apportion liability for the overall disability, that "... each of these incidents in employment substantially contributed to the petitioner's overall condition and there is no way to ascribe a percentage of contribution under these facts." In consequence, he required equal contribution by each of the respondents.
The Compensation Judge described petitioner's complaints as follows:
... basically that her back was hurting her; she stated that it was better than it was after when she was first hurt, that the pain had eased up during the six months of temporary disability, but that physical stress aggravated it every now and then. She says that she would get pain on the lower right side which was sharp and became constant and throbbing. She states that she cannot sit or stand for over one hour. She notes that the pain stays mostly in her lower back and it limits her physical activities  housework, et cetera....
On deposition, Dr. Van Horn opined that the petitioner's symptoms "never completely cleared up, but that they were aggravated" by her subsequent employment. It was not disputed that petitioner was still symptomatic and was wearing a back brace and undergoing treatment at the time she began employment at Head Start. It was also undisputed that no accident occurred nor were there any unusually strenuous activities required of her.
Thus, there was undisputed proof of an accident at Mayfair which activated a preexisting back condition, but no proof of any specifically aggravating injuries at the subsequent employers. Neither was there any objective proof of an increase in the disability which was clearly present in September 1983, *537 prior to beginning of the Head Start job. The only medical opinions of increment were the subjective conclusions by Shaw and Van Horn of "aggravation" with no basis given for distinguishing a mere rekindling of symptoms from a substantial increase in those symptoms.
We do not see this as a case where a substantial contribution to disability from the subsequent accidents or employments was plainly established, but where it was difficult to apportion the extent of those contributions. Compare Quinn v. Automatic Sprinkler Co., supra 50 N.J. Super. at 480. Rather, our careful canvass of the entire record discloses that there is no credible evidence of material contribution by the two subsequent employments. It is not the fault of the subsequent employers that the injury of January 1983, having been reported to Mayfair, and having produced continuing symptoms which were under active treatment in September 1983 and clearly capable of evaluation at that time, was not then quantified by either petitioner's or Mayfair's physician. Absent evidence of any definite accidental events, it would unjustly place a nearly impossible burden upon a subsequent employer to require that it demonstrate that a brief employment did not contribute substantially and occupationally to an increase in the disability resulting from an initial accident.
We recognize that the scope of appellate review is limited to determining whether the findings of the Judge of Compensation could reasonably have been reached on sufficient credible evidence present in the whole record, after giving due weight to his expertise and his opportunity of hearing and seeing the witnesses. Hodgdon v. Project Packaging, Inc., 214 N.J. Super. 352, 360 (App.Div. 1986). See, also, Close v. Kordulak Bros., 44 N.J. 589, 599 (1965). However, the Compensation Judge's findings must also be tested against the policy of the recent amendments to the Compensation Act as considered in Poswiatowski v. Standard Chlorine Chemical Co., 96 N.J. *538 321, 328 (1984) and Perez v. Pantasote, Inc., 95 N.J. 105, 114 (1984). There the Court emphasized that the legislative purpose of the current workers' compensation statute was to eliminate awards for minor partial disabilities while increasing awards for the more seriously disabled, as well as to contain overall costs. Thus, Kozinsky was required to sustain the following significant burden as to each employer respondent:
... the employee must first prove by demonstrable objective medical evidence a disability that restricts the function of his body ... he must establish either that he has suffered a lessening to a material degree of his working ability or that his disability otherwise is significant and not simply the result of a minor injury....
Poswiatowski, supra, 96 N.J. at 330, Perez, supra, 95 N.J. at 118. We note that the legislative history shows an intention to require objective medical evidence of permanent partial disability as well as credits for preexisting disabilities. See Poswiatowski, supra, 96 N.J. at 331, n. 2.
We do not agree with the Compensation Judge that the record disclosed objective medical evidence capable of establishing to a probability a material degree of lessening of working ability or significant increase in disability as the result of the Head Start or Edison employments.
Although it is not disputed that there was sufficient evidence to meet the Poswiatowski and Perez tests as to the extent of permanent partial disability found by the Compensation Judge, our review of the record discloses no basis in the medical evidence to support a determination that there was a material subsequent lessening of working ability or a significant increase in disability attributable to the employments which followed the Mayfair employment. "An award of compensation cannot rest upon imagination, surmise or conjection, or upon speculation." DiCostanzo v. Matthews Const. Co., 110 N.J. Super. 383, 389 (App.Div. 1970) aff'd 58 N.J. 159 (1971). There can, of course, be an increase in the initial award when proneness to increased disability resulting from a work connected *539 accident moves from a potential to an actual occurrence. DiCostanzo, ibid. Absent the requisite objective medical evidence of significant increase in disability resulting from the subsequent employments, petitioner's burden of proof was not met as to the successor employers.
Indeed, it appears to us more probable upon the record before us that Kozinsky's inability to tolerate the modest efforts required of her at those employments demonstrates the degree to which the initial injury rendered her disabled at the time of the award.
The compensation judgment against Head Start and Edison is reversed, and the judgment against Mayfair is accordingly modified and increased so that its liability thereunder encompasses the entire award made to Kozinsky.[1] Although no appeal was filed by Edison, we note that the principles established herein are equally applicable to both Head Start and Edison, and that Edison did participate actively in briefing and arguing the issues on appeal. In E & K Agency v. Van Dyke, 60 N.J. 160 (1972), it was held that where a reversal of judgment eliminates the basis for recovery against a non-appealing party, as well as against the party who appealed, an appellate tribunal may, in the interest of justice, make available the benefit of its ruling to the non-appealing party. We do so here.
Reversed. Judgment should be modified consistently herewith.
NOTES
[1] Our conclusion renders it unnecessary for us to resolve the "hybrid" question of how to apportion payments among a succession of employers where significant occupational aggravation of an accident caused disability has been established by demonstrable objective medical evidence. See and compare, Quinn v. Automatic Sprinkler Co., 50 N.J. Super. 468 (App.Div. 1958); Giagnacovo v. Beggs Bros., 64 N.J. 32 (1973); Cusatis v. American Cyanamid, 176 N.J. Super. 329 (App.Div. 1980); Bond v. Rose Ribbon & Carbon Mfg. Co., 42 N.J. 308 (1964); Schnaars v. Canfield Oil Co., 91 N.J. Super. 433(App.Div. 1966). See also, Larson, The Law of Workman's Compensation, § 95 (1978 Ed.).