241 N.J. Super. 604 (1990)
575 A.2d 903
MILDRED L. MANZO, PETITIONER-RESPONDENT,
v.
AMALGAMATED INDUSTRIES UNION LOCAL 76B, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 9, 1990.
Decided June 20, 1990.
*606 Before Judges PETRELLA, O'BRIEN and STERN.
Carpenter, Bennett & Morrissey, attorneys for appellant (Anthony C. Famulari, of counsel; Joel L. Botwick, on the brief).
Balk & Mandell, attorneys for respondent (Jack Mandell, of counsel and on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Amalgamated Industrial Union Local 76B (Union) appeals from a judgment of the Workers' Compensation Court finding petitioner entitled to dependency benefits as a result of the death of her husband following an automobile accident on December 26, 1985. We reverse.
At the time of his death, Peter Manzo was president of the Union, having held that position for approximately five years. He was also vice-president of the International Union, a separate entity. On December 26, 1985, Mr. Manzo sustained injuries in an automobile accident. At the time of the accident, Mr. Manzo was driving an automobile, leased by the Union, from his home in Lodi to the union office in New York City. The judge of compensation found that the accident occurred at 6:20 a.m., on I-95 in Teaneck. Although the immediate cause *607 of death was occlusive coronary artery disease, as determined by an autopsy performed by the medical examiner and stated in the death certificate, the medical examiner also found:
With regard to the actual etiology of Mr. Manzo's demise however I believe it is fair to say in terms of medical probability that there is a causal relationship between Mr. Manzo's death and either the multiple traumas which resulted from the accident or the combined effect of those traumas and the trauma of surgery upon him, taking into account his underlying cardiac condition.[1] [Footnote supplied.]
At issue is whether petitioner's claim is barred by the "going and coming" rule. The judge of compensation concluded it was not and the employer appeals. The "going and coming" rule ordinarily precludes an award of compensation benefits for injuries sustained during routine travel to and from an employee's regular place of work. Since the rule had became diluted by a series of exceptions, in 1979 the Legislature included in its extensive amendments to the Workers' Compensation Act, L. 1979, c. 283, a provision defining when employment commences. See Livingstone v. Abraham & Straus, Inc., 111 N.J. 89, 96, 543 A.2d 45 (1988). This legislation reflects the Legislature's disagreement with the judiciary's broad reading of the statutory criteria for coverage. The Legislature drafted the statute to "establish [] relief from the farreaching effect of the `going and coming rule' decisions by defining and limiting the scope of employment." Id. at 100-101, 543 A.2d 45. Thus, N.J.S.A. 34:15-36 was amended to include the following pertinent language:
Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer; provided, however, when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by *608 the employer; but the employment of employee paid travel time by an employer for time spent traveling to and from a job site or of any employee who utilizes an employer authorized vehicle shall commence and terminate with the time spent traveling to and from a job site or the authorized operation of a vehicle on business authorized by the employer.
In his extensive fact-finding in this case, the judge of compensation found that Manzo's home in Lodi had become a "job site" by virtue of the union business being conducted there.[2] He further concluded that before leaving home on the morning of his death Manzo was performing union business. Therefore, his trip on the morning in question from his home to his office was found by the judge of compensation to have occurred while he was going from one job site to another and thus arose out of and in the course of his employment. Therefore the judge concluded that his death[3] entitled petitioner to dependency benefits.
*609 We recognize our limited scope of review, i.e., when the findings of the judge of compensation could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole and with due regard to the opportunity of the judge to hear the witnesses and judge their credibility and with due regard to the agency's expertise when such expertise is a pertinent factor, we are bound by those findings. Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965). However, where the focus of the dispute is not on credibility but, rather, alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom, our function broadens somewhat. Where our review of the record "leaves us with the definite conviction that the judge went so wide of the mark that a mistake must have been made," we may "appraise the record as if we were deciding the matter at inception and make our own findings and conclusions." Snyder Realty v. BMW of N. Amer., 233 N.J. Super. 65, 69, 558 A.2d 28 (App.Div. 1989).
We fully accept the determination of the judge of compensation that petitioner was an extremely credible witness[4] and that her husband, the decedent, was a dedicated union president who was at all times concerned with the welfare of the Union and its members and cautious as to expenditures made by it. Decedent's office was located in New York City where his secretary and all appropriate office equipment were located. The Union also had an office in East Orange which contained a telephone, furniture for meetings, and a photocopy machine, although it was not staffed. We also accept the findings of fact by the judge of compensation that decedent, as president of the Union, often conducted union business from his home. He used the recreation room for meetings with his *610 associates, and a back room (labeled as the radio room because it also contained his ham radio operation and a computer used for the radio, both unrelated to union activities) for the conduct of union business. His wife testified that all business records were kept there, as well as the phone which was paid for by the Union.[5] It was conceded that the Union did not make any payment to decedent for the use of his home, nor did he claim such use on his income tax return.[6]
The Union has approximately 4,000 members and approximately 100 shops located in New Jersey, New York and Connecticut. There were four business agents. As president, decedent was in charge of the Union and did not report to any superior. The judge of compensation found that decedent was in fact the Union, and thus his decisions were those of the Union, particularly the decision to utilize his home for union business.
Here the petitioner argues, and the judge of compensation found, that because the decedent regularly used his home to conduct union business it had become a job site. In McKeever v. N.J. Bell Tel. Co., 179 N.J. Super. 29, 430 A.2d 247 (App. Div.), certif. den. 87 N.J. 410, 434 A.2d 1086 (1981), a case decided after the enactment of the 1979 amendments, the court concluded that it was essential for a corporate attorney for New Jersey Bell Telephone to work at home in order to live up to his employer's expectations, that his employer encouraged *611 such activity, which the attorney did constantly with his employer's knowledge. Thus, when that attorney died as a result of injuries sustained in an automobile accident when driving home from work with his briefcase containing handwritten notes pertaining to a matter on which he was currently working for his employer, his dependent was found to be entitled to dependency benefits, reversing the decision of the judge of compensation to the contrary.[7] Although McKeever provides some support for the petitioner, we believe this type of exception to the "going and coming" rule is what the Legislature intended to eliminate by its 1979 amendments.
The McKeever court relied upon Paige v. The City of Rahway, 74 N.J. 177, 376 A.2d 1226 (1977), and Sabat v. Fedders Corporation, 75 N.J. 444, 383 A.2d 421 (1978). In his dissent in the latter case, Justice Clifford stated, "Once again the Court chips away at the going and coming rule, eroding it in one breath and vouchsafing its endurance in the next." We believe the 1979 amendment was the Legislature's response to such cases as Paige and Sabat. Even in the Sabat case, the Supreme Court had noted in a footnote,
We note that Sabat's employment situation differs dramatically from that of employees who take work home out of a sense of self-imposed moral obligation or self-perceived necessity arising out of an inability to cope with their workload during their normal workday. The benefits of such activity are predominantly personal with only an incidental enhancement of the efficient functioning of the employer enterprise. In such cases the work connection is, without more, too attenuated to justify the imposition of the costs of off-duty injuries on the employer.
[75 N.J. at 451, 383 A.2d 421]
This subject is discussed by Professor Larsen in terms of the dual purpose doctrine as it applies to working at home. See 1 *612 Larsen, Workers' Compensation Law, §§ 18.31, 18.32 and 18.33, in which he observes:
When reliance is placed upon the status of the home as a place of employment generally, instead of or in addition to the existence of a specific work assignment at the end of the particular homeward trip, three principal indicia may be looked for: the quantity and regularity of work performed at home; the continuing presence of work equipment at home; and special circumstances of the particular employment that make it necessary and not merely personally convenient to work at home. [Id., § 18, 32 at 4-309]
The issue was squarely addressed by the California Supreme Court in Santa Rosa Junior College v. Workers' Compensation Appeals Board, 708 P.2d 673, 40 Cal.3d 345, 220 Cal. Rptr. 94 (1985). There, the decedent, a college mathematics instructor was killed while driving from the school to his home. At the time of the accident, decedent had some student papers he intended to grade that evening. It was his practice to bring home a few hours of work each night. He worked in a section of his living room reserved for that purpose where he kept duplicate copies of necessary books. His wife explained that her husband did this because on campus he was subject to interruption by students. There was further evidence that working at home by the faculty was the rule rather than the exception even though an office was provided for each instructor. The court held that the fact that an employee regularly works at home does not transform the house into a second job site unless such was required by the employer. The court said:
... Generally, `[w]ork done at home may exempt an injury occurring during a regular commute from the going and coming rule if circumstances of the employment  and not mere dictates of convenience to the employee  make the home a second job site. If the home becomes a second business situs, the familiar rule applies that injuries sustained while traveling between job sites is compensable.... [T]he commute does not constitute a business trip if the employees work at home for their own convenience: `serving the employee's own convenience in selecting an off-premise place to work is a personal and not a business purpose.' [Citation omitted.] [708 P.2d at 679, 220 Cal. Rptr. at 99-100]
The court noted that the contemporary professional  the draftsman, the engineer, the lawyer  frequently take work home, "[b]ut this hearthside activity  while commendable  *613 does not create a white collar exception to the going and coming rule." Id. at 680, 220 Cal. Rptr. at 101.[8]
That is the issue in this case. Was it necessary for Mr. Manzo to use his home for the conduct of union business or was it simply for his personal convenience? The judge of compensation recognized this when he said,
The question that I have is either if I find as I do that the home was a work place, within the meaning of the insurance policy or as a job site within the meaning of the statute, I have to come to the second point of whether or not any work was being performed at the job site or work place of the home the morning of December 26th, 1985, because if I find that there was no work being performed any other finding that I made about the house does not make that injury compensable, because it was his home.
As noted, the Union provided an office in New York, staffed by a secretary and business equipment, and an office in New Jersey which contained business equipment, so the conclusion of the judge of compensation that Mr. Manzo's work related activities at home were for the benefit of the Union, as opposed to his own convenience, is not supported by the evidence. The judge of compensation concluded that Mr. Manzo was the Union and therefore his decision to work at home was the decision of the Union. We do not subscribe to that proposition. The judge apparently further concluded that, because he found that Mr. Manzo had done some union work at home before leaving for his office on the fatal day, he was traveling from one job site to another (although some of the work that he was performing was not for the Local but for the International). Initially, the judge acknowledged that he had very serious reservations about the petitioner's right to recover in this case, but indicated that after hearing the testimony he did not have any doubt in his mind that Manzo was performing work at his home on that particular day that benefited the Union and thus the accident was compensable. We disagree. If Manzo had been injured *614 while performing union activities at home, even for his own convenience, benefits may have been properly payable. See 1 Larsen, Workers' Compensation Law, § 18.34 at 4-318. However, there is no dispute that, at the time of the accident preceding Mr. Manzo's death, he was on his way from his home to his office in New York City. Thus, accepting all of the findings of fact by the judge of compensation, we disagree with his conclusions on those facts.
Reversed.
NOTES
[1] We note from the medical examiner's report received into evidence that Mr. Manzo was admitted to the hospital at 10:45 a.m. It is not clear from the record as to where he was between the happening of the accident at 6:20 a.m. and his admission to the hospital.
[2] We concluded in Nemchick v. Thatcher Glass Mfg. Co., 203 N.J. Super. 137, 495 A.2d 1372 (App.Div. 1985), that the Legislature intended to preserve the "special mission" exception to the going and coming rule when an employee is away from the work place at his employer's direction and "when the employee is engaged in the direct performance of duties assigned ... by the employer." Id. at 142, 495 A.2d 1372. In Ward v. Davidowitz, 191 N.J. Super. 518, 468 A.2d 250 (App.Div. 1983), we noted that the amendment was to eliminate an employer's responsibility for accidents occurring in areas not under the employer's control unless the employee is required to be away from the work place by the employer. The fact that a bus company employee was provided free transportation on bus company's buses as a benefit of his employment which he used for commuting to and from work did not bring that travel to work within the scope of his employment. Mahon v. Reilly's Radio Cabs, Inc., 212 N.J. Super. 28, 513 A.2d 367 (App.Div. 1986), certif. den. 107 N.J. 79, 526 A.2d 159 (1987). A police officer who was permitted by police department regulations to wear his uniform while traveling to and from work in his private automobile was not entitled to benefits for injuries sustained in an automobile accident. Plodzien v. Township of Edison Police Department, 228 N.J. Super. 129, 549 A.2d 59 (App.Div. 1988).
[3] As noted, the immediate cause of death was occlusive coronary artery disease, but respondent seems to concede, apparently based upon the medical examiner's opinion quoted above, that Mr. Manzo's death was at least in part causally related to the accident.
[4] We note however that the judge made findings based upon Mrs. Manzo's observations of her husband's activities between 4:00 a.m. and 6:00 a.m. before he left the house, notwithstanding her testimony that she did not get up at the time her husband did, as noted by appellant.
[5] Petitioner testified that it was at her insistence that her husband had the Union pay for the telephone since he was using his own telephone for union business at his own expense.
[6] As to this circumstance, the judge of compensation made an unusual observation when he said:

... He could have easily taken that home or a portion of that room, there are many tax benefits that could have been used by Mr. Manzo and he had  if I had information of him milking the Tax Law or milking some other situation I would have come to a different conclusion, but this is a guy who didn't care about the dollars for himself. This is a guy who cared about the dollars for his Union.
[7] Although the McKeever case was decided on May 5, 1981, after the 1979 amendments to the Workers' Compensation Act, no reference is made to those amendments in the opinion. Since no dates are set forth in the opinion, we are unable to determine when Mr. McKeever died or when the judge of compensation rendered his decision.
[8] We further note that such an exception would seem to create a distinct advantage to white collar workers not available to blue collar workers who are unable to take home projects requiring equipment and manual labor to accomplish.