968 A.2d 746 (2009)
406 N.J. Super. 558
GERALDINE SINGLETARY, Petitioner-Respondent,
v.
WAWA, Respondent-Appellant/Respondent.
DOCKET NO. A-5723-07T2.
Superior Court of New Jersey, Appellate Division.
Submitted March 18, 2009.
Decided April 23, 2009.
*747 Worthington & Worthington, attorneys for appellant Wawa as self-insured (Francis W. Worthington, of counsel and on the brief).
Capehart & Scatchard, attorneys for respondent Wawa as insured by AIG (Ian G. Zolty, Mt. Laurel, of counsel and on the brief).
Howard J. Batt, Pennsauken, attorney for respondent Geraldine Singletary, joins in the brief of respondent Wawa as insured by AIG.
Before Judges STERN, PAYNE and ASHRAFI.
The opinion of the court was delivered by
ASHRAFI, J.S.C. (temporarily assigned).
In this appeal, we consider whether the Division of Workers' Compensation erred in determining that petitioner Geraldine Singletary's current injury and disability were caused by her continuing employment rather than earlier work-related accidents while employed by the same employer. The dispute is between the employer while self-insured and the workers' compensation insurance carrier that covered the employer at the time of the earlier accidents. Finding no error, we affirm.
Petitioner Singletary has worked continuously at a Wawa convenience store from 1987 to at least 2007. In September 1992 and again in December 2001, she suffered work-related slip and fall accidents causing injury to her cervical spine. At the time of each accident, Wawa had a workers' compensation insurance policy with respondent AIG Domestic Claims, Inc., which paid Singletary's claims for medical treatment and partial disability caused by each accident.
On January 1, 2002, Wawa became self-insured for workers' compensation claims. Approximately five years after the second accident, Singletary learned that she needed cervical fusion surgery. After a hearing, the judge of compensation determined that Wawa as self-insured (hereinafter referred to as "Wawa") is liable for Singletary's latest medical costs and disability.
Wawa filed a notice of appeal. Wawa as insured by AIG (hereinafter referred to as "AIG") is the primary respondent in this appeal. Counsel for Singletary has written a letter in support of AIG's position, adding that the compensation rates payable to Singletary are higher if Wawa is liable for a condition that became manifest in 2006 than if AIG were to be held liable for a claim dating back to 2001.
"[T]he scope of appellate review is limited to determining whether the findings of the Judge of Compensation could reasonably have been reached on sufficient credible evidence present in the whole record, after giving due weight to his expertise and his opportunity of hearing and seeing the witnesses." Kozinsky v. Edison Prods. Co., 222 N.J.Super. 530, 537 (App.Div.1988); see Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965). "However, where the focus of the dispute is not on credibility but, rather, alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom," the scope of appellate review is somewhat broader. Manzo v. Amalgamated Indus. Union Local 76B, 241 N.J.Super. 604, 609, 575 A.2d 903 (App.Div.1990). "Where our review of the record `leaves us with the definite conviction that the judge went so wide of *748 the mark that a mistake must have been made,' we may `appraise the record as if we were deciding the matter at inception and make our own findings and conclusions.'" Ibid. (quoting Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J.Super. 65, 69, 558 A.2d 28 (App.Div.1989)).
Here, the judge of compensation placed an oral decision on the record that included detailed findings of fact, which he described as essentially undisputed.
After the first accident of September 1992, an MRI of Singletary's cervical spine revealed a disc herniation at C5-6. In 1996, she underwent an anterior cervical discectomy and fusion at C5-6. On June 22, 1998, the Division of Workers' Compensation awarded Singletary 30% of permanent partial total disability for the cervical spine injury. AIG was responsible for compensating her.
On December 12, 2001, Singletary suffered a second slip and fall injury to her cervical spine. An MRI taken in January 2002 revealed the intervertebral disc fusion of C5-6, a right focal disc herniation at C4-5, and a central disc herniation at C6-7. The course of treatment for the injuries, including physical therapy and cervical injections, lasted through May 21, 2002, about five months. Singletary did not lose any time from work. On November 13, 2003, the Division of Workers' Compensation awarded her 45% of permanent partial total disability for the 2001 cervical spine injury, with a credit of 30% for the prior award. The medical expenses and disability award were again paid by AIG.
Singletary continued to work for Wawa and did not receive any further treatment for her neck injuries for more than four years after May 2002. In 2006, she consulted her family physician because she was feeling pain. The doctor referred her for an MRI, which was performed in July 2006. Subsequently, a specialist examined Singletary and recommended surgery, an anterior cervical discectomy at C4-5.
On October 19, 2006, Singletary filed both a claim petition against Wawa for occupational exposure beginning on November 13, 2003, and an application to re-open her claim against AIG based on the December 2001 accident. Both Wawa and AIG denied liability. In August 2007, Singletary filed a motion for temporary and medical benefits, seeking to require one or the other respondent to pay for the recommended surgery. The judge of compensation entered an order in September 2007, without prejudice, requiring AIG to cover expenses for diagnostic testing and treatment and to pay temporary disability benefits, subject to a possible order of reimbursement.
Wawa and AIG jointly referred Singletary for diagnosis and treatment to Dr. Delasotta. Following his examination, Dr. Delasotta concluded that Singletary needed surgery. On March 25, 2008, she successfully underwent an anterior cervical discectomy with interbody fusion at C4-5.
The Division of Workers' Compensation conducted a hearing on October 11, 2007, and March 6, 2008, to determine which of the respondents should pay for medical treatment and temporary disability benefits. Singletary and Dr. Delasotta were the only witnesses, and the judge found both of them credible.
Singletary testified that her job responsibilities at Wawa included running the cash register, stocking the shelves, doing inventory, making deposits, preparing orders, waiting on customers, and working in the deli. She testified further that many of her job responsibilities caused pain to her head, neck, arm, and shoulder, in particular stocking the shelves with milk, bagging heavy items, reaching overhead to *749 stock the cigarette shelves or to retrieve cigarettes for customers, operating the meat slicer, and running the trash compactor.
Singletary also testified that in 2007 she reduced her work schedule from about forty-five to thirty-six hours per week because she could not work as many hours anymore. She testified that the pain had gotten worse since November 2003, and that she was feeling pressure at the base of her skull that was not there in 2003. She said she now suffered from daily headaches.
Dr. Delasotta testified that Singletary's MRIs from January 2002 and July 2006, as well as results from a myelogram done in November 2007, provided objective medical evidence of worsening pathology at the C4-5 level. He explained that although her condition in 2002 did not require surgery, the progression of the degenerative process at C4-5 now necessitated surgery.
Dr. Delasotta described as a medical fact rather than merely his opinion that Singletary's work duties at Wawa from January 2002 forward aggravated and accelerated the underlying pathology at C4-C5 resulting in her need for surgery. The doctor explained that "it is impossible to medically place one particular event that is only responsible for the patient's condition." He indicated that the previous fusion surgery resulting from the 1992 accident, as well as the 2001 accident, were also material contributing factors to the current condition. Significantly, Dr. Delasotta testified that if Singletary had stopped working or taken a sedentary job after the 2001 accident, she probably would not have needed the C4-5 surgery. He testified that if she continues to do the same heavy workload after her C4-5 surgery, she will "end up with the same situation between three to five years at C6-C7."
Based upon Dr. Delasotta's testimony, the judge of compensation concluded that there was "objective medical evidence of a significant increase in petitioner's disability to require further surgery, which is directly attributable materially to a meaningful degree to the work performed by the petitioner beginning in January 2002 and continuing until she sought medical treatment." The judge found further that "petitioner's continued employment at Wawa, as self-insured, legally and materially contributed to petitioner's disability." Therefore, he concluded that Wawa is responsible for Singletary's medical treatment and for all temporary disability benefits attributed to this period of disability. The judge ordered Wawa to reimburse AIG for all medical expenses and temporary disability benefits paid on Singletary's behalf since the court order of September 20, 2007, and to begin paying her continuing medical expenses and temporary disability benefits.
In this appeal, Wawa relies heavily upon Peterson v. Hermann Forwarding Co., 267 N.J.Super. 493, 631 A.2d 1274 (App.Div.1993), certif. denied, 135 N.J. 304, 639 A.2d 303 (1994), and Kozinsky v. Edison Prods. Co., supra, 222 N.J.Super. 530, 537 A.2d 737, to argue that it is in the position of a subsequent employer that should be spared responsibility for pre-existing injuries. It contends that AIG, as the insurer on the risk at the time of the slip and fall accidents and injuries, should continue to provide coverage for Singletary's current claims.
In both Peterson and Kozinsky, petitioners suffered work-related injuries and then asserted claims of occupational exposure against subsequent employers, alleging that the subsequent employment aggravated the original injury and caused increased disability. Peterson, 267 N.J.Super. at *750 496, 631 A.2d 1274; Kozinsky, 222 N.J.Super. at 533, 537 A.2d 737. In both cases, we held that the petitioners' subsequent employment did not legally and materially contribute to the petitioners' disabilities and, therefore, that the subsequent employers could not be held liable. Peterson, 267 N.J.Super. at 509, 631 A.2d 1274; Kozinsky, 222 N.J.Super. at 537-39, 537 A.2d 737. In this case, the judge of compensation distinguished Peterson and Kozinsky, concluding that Singletary's continuing work duties legally and materially caused her latest disability.
Under the workers' compensation statute, N.J.S.A. 34:15-31a, "compensable occupational disease" is defined as "all diseases arising out of and in the course of employment, which are due in a material degree to causes and conditions which are or were characteristic of or peculiar to a particular trade, occupation, process or place of employment." "Material degree" is "an appreciable degree or a degree substantially greater than de minimis." Peterson, supra, 267 N.J.Super. at 504, 631 A.2d 1274 (quoting N.J.S.A. 34:15-7.2). Therefore, to receive an award for compensable occupational disease, "a petitioner must show that the alleged occupational exposure contributed to the resultant disability by an appreciable degree or a degree substantially greater than de minimis." Ibid.
Wawa points to Dr. Delasotta's testimony regarding the January 2002 MRI, in which he causally related the disc protrusions at C4-5 and C6-7 to the 2001 accident. Wawa argues that there is no evidence that Singletary's job at Wawa would have necessitated fusion surgery if not for the prior slip and fall injuries. It cites testimony of Dr. Delasotta that he knew after reviewing the 2002 MRI that Singletary would require additional fusion surgery at some point in the future.
After Wawa filed a notice of appeal, the judge of compensation placed a supplementary oral opinion on the record, in which he emphasized that:
there is demonstrative objective evidence of a material worsening in the pathology at C4-5 based upon the comparison of the MRI film of January 2002 and the MRI film of July 2006, as well as, the myelogram of November, 2007. Doctor Delasotta was of the opinion that the worsening was such, that there was now impingement on the spinal cord, which he attributed to the heavy work load that the petitioner continued to perform. Thus, there was not only a worsening of the condition, manifested after five years of additional continuous heavy employment, but there is the opinion of a doctor that this heavy work load contributed in a material way, to the need for additional surgery. This type of opinion and these types of conclusions and testing were not available and did not exist in the Peterson and Kozinsky cases.
Both Peterson and Kozinsky hold that the determinative issue in finding an employer liable is whether the employment materially contributed to the petitioner's disability. Peterson, supra, 267 N.J.Super. at 504, 509, 631 A.2d 1274; Kozinsky, supra, 222 N.J.Super. at 537-39, 537 A.2d 737. In that respect, the length of time worked for a particular employer may be relevant. Very short periods of employment, such as in Peterson and Kozinsky, may allow no reasonable inference of material contribution to disability. In contrast, long periods of physically taxing employment, such as the five years that Singletary worked at Wawa after her December 2001 accident, may reasonably support a finding of material contribution to disability. Cf. Ort v. Taylor-Wharton Co., 47 N.J. 198, 219 A.2d 866 (1966) (petitioner *751 who had earlier been awarded 30% of total permanent disability for inhalation of dust now found to be 100% disabled as a result of five additional years of inhaling dust at same employer but while employer was insured by different carrier).
Wawa argues that no deference is due to the judge's interpretation of the facts or conclusions because he made errors "in the recitation of the factual testimony." For example, Wawa asserts that the judge was inaccurate in stating that Singletary was working full duty without any real problems until 2006. This argument overstates the judge's finding, which recognized a substantial deterioration in the condition of Singletary's cervical spine that became manifest in 2006.
Credible evidence in the record supports the judge's finding that "[t]here was a clear worsening of the petitioner's condition which ... is attributable in a material degree to the work she performed during the time Wawa was self-insured." That evidence includes testimony that lifting and other tasks stressful to her neck were among Singletary's job duties, that beginning in 2006 she had difficulty operating the trash compactor, that she worked continuously for almost five years before seeking further medical treatment, that only in 2006 did she reduce her hours because the pain was too great, that she began to feel a vice-like pressure in the back of her skull and to experience daily headaches that were not present in 2003, and that she started to increase her medication in 2006.
In addition, the judge's findings are supported by Dr. Delasotta's opinion that surgery would not be needed if Singletary had retired or taken a sedentary position after the 2001 accident. Although Dr. Delasotta testified that the 2006 MRI showed degenerative changes at C4-5 and C6-7, he also testified that Singletary's heavy work load had accelerated the degenerative process.
The judge's findings and conclusions were "reasonably ... reached on sufficient credible evidence present in the whole record." Kozinsky, supra, 222 N.J.Super. at 537, 537 A.2d 737. We find no "error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom." Manzo v. Amalgamated Indus. Union Local 76B, supra, 241 N.J.Super. at 609, 575 A.2d 903.
Finally, we have considered Wawa's public policy arguments that subsequent employers will be reluctant to hire employees with prior claims if they can be held liable for benefits for an injury suffered through previous employment. See Peterson, supra, 267 N.J.Super. at 505, 631 A.2d 1274. We do not find those arguments persuasive in the context of this case. This is not a case where the subsequent employment "merely cause[d] pain from pre-existent conditions to be manifested." Ibid. Rather, Singletary suffered additional "physical insult," ibid., every day she worked at Wawa because of the heavy lifting and other stressful tasks required by her job.
The judge relied on the evidentiary record to conclude reasonably that Singletary's need for surgery was materially attributable to her job duties after January 2002, and that Wawa as self-insured is responsible for paying her workers' compensation benefits.
Affirmed.