**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3024-19

RICKY MARTER,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

Submitted January 24, 2022 – Decided January 31, 2022

Before Judges Sabatino and Mayer.

On Appeal from the Board of Trustees of the Public Employees' Retirement System, Department of Treasury, PERS No. x-xxx914.

Gaylord Popp, LLC, attorneys for appellant (Samuel M. Gaylord, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jeffrey D. Padgett, on the brief).

PER CURIAM

Ricky Marter, a former senior corrections officer at the Monmouth County juvenile facility, appeals from a February 20, 2020 final agency decision by the Board of Trustees of the Public Employees' Retirement System ("PERS") denying his claim for accidental disability retirement benefits under N.J.S.A. 43:15A-43.

The PERS Board's determination adopted the decision of an administrative law judge ("ALJ"), who had presided over fact-finding hearings. The ALJ concluded appellant had failed to prove his slip-and-fall accident at work in 2010 had caused him to sustain mental and cognitive deficits rendering him "permanently and totally disabled." Richardson v. Bd. Of Trs., Police and Firemen's Ret. Sys., 192 N.J. 189, 212-13 (2007).

For the reasons that follow, we remand this matter to the agency for reconsideration and, if it deems appropriate, additional fact-finding. We do so because the ALJ's principal finding about medical causation, which attributes appellant's claimed mental and cognitive deficits to preexisting "degenerative" causes, does not correspond to the record.

The factual record was developed over two days of hearings before the ALJ in May 2019 and August 2019. The ALJ heard testimony from appellant,

his treating psychologist, Dr. Theodore Batlas, and the Board's competing expert, Dr. Steven Lomazow, a neurologist.

Appellant's disability claim arises out of an incident at work on January 27, 2010, in which he slipped on a wet floor and struck his head. It is unclear whether he lost consciousness in the fall. Appellant was taken to a hospital and released.

Appellant contends the head injury caused him to suffer memory loss and various cognitive deficits. He stopped working due to the alleged disability.

Appellant was initially evaluated and treated in 2011 by a Dr. Alan Colicchio, a neurologist, who diagnosed him with a cerebral concussion. Also in 2011, appellant was evaluated in two Independent Medical Examinations ("IMEs") by Dr. Jeffrey Pollock, a neurologist, and Dr. Allan Burstein, a psychiatrist. Both Dr. Pollock and Dr. Burstein found that appellant was not permanently and totally disabled, perceiving appellant was exaggerating his symptoms.

Appellant's claim for accidental permanent disability was denied by PERS, and he requested a contested-case hearing in the Office of Administrative Law ("OAL"). That hearing was delayed for many years because appellant moved, without opposition, to have the case placed on the OAL's inactive list,

3

pending a re-evaluation by an orthopedist. Evidently, appellant decided not to pursue an orthopedic basis for his disability claim and instead relied solely on a claim of neurological and cognitive deficits.

According to appellant's testimony at the hearing and various statements he made to the examining doctors, he allegedly cannot perform mentally difficult tasks and generally stays home and is inactive. However, a surveillance video from 2011 showed appellant doing vigorous activities such as using a leaf blower, mowing the lawn, swinging an axe, using a power saw, and power-washing a deck. Appellant also admitted in his testimony that he continues to drive a motor vehicle.

Dr. Batlas's office administered a series of neuropsychological tests in 2019. Dr. Batlas concluded from those tests, and his own examination and records review, that appellant sustained a permanent disabling head injury in the 2010 incident. These opinions are reflected in both Dr. Batlas's written reports admitted into evidence and his testimony at the administrative hearing.

Dr. Lomazow, meanwhile, concluded from his one-session IME in 2019 that appellant was not permanently disabled and that he was exaggerating his alleged deficits. Dr. Lomazow did not administer separate neuropsychological tests, but instead reviewed appellant's medical records, including the test results

from Dr. Batlas, and conducted his own less-elaborate "bedside" evaluation of appellant's cognitive and memory functions. Dr. Lomazow also noted the various activities performed by appellant on the 2011 video surveillance. Dr. Lomazow's observations and opinions are set forth in his written report admitted into evidence and also his testimony at the hearing.

In her written decision, the ALJ found both testifying experts were "highly qualified." She concluded that the Board's expert, Dr. Lomazow, was "more persuasive" than Dr. Batlas, both as to the contested issues of the presence of a permanent and total disability and causation.

Notably, in her decision, the ALJ stated she "accepted Dr. Lomazow's opinion, based on objective findings, that any symptoms and possible diagnosis reported by petitioner, whether exaggerated or not, were due to preexisting longstanding and degenerative conditions and were unrelated to the closed head trauma, resulting from the incident." (Emphasis added).

The Board adopted the ALJ's findings without further elaboration.

On appeal, appellant argues the ALJ's decision is flawed because the ALJ should have given more weight to the opinion of Dr. Batlas as the treating doctor. Appellant further contends the Board's expert and the ALJ unduly focused on appellant's physical capacity, as shown in the 2011 video, rather than

5

his mental ability to respond spontaneously to situations at the juvenile detention facility.

It is well settled that our standard of appellate review in administrative law cases of this nature is to afford substantial deference to the agency, unless its decision is arbitrary, capricious, or unreasonable, or lacking fair support in the record. Caminiti v. Bd. of Trs., Police and Firemen's Ret. Sys., 431 N.J. Super. 1, 14 (App. Div. 2013). In addition, we customarily will not set aside factual and credibility findings unless they are clearly mistaken or not supported by substantial credible evidence in the record. Cf. H.K. v. Dep't of Hum. Servs., 184 N.J. 367, 386 (2005). The pivotal question in this appeal is whether the record contains such "substantial credible evidence" to support the ALJ's findings as adopted by the Board.

Having reviewed in depth the testimony and medical reports submitted into evidence, we cannot discern "substantial credible evidence" in the record to support the ALJ's finding that Dr. Lomazow presented expert proof that appellant's claimed mental and cognitive deficits "were due to preexisting longstanding and degenerative conditions." Nor does there appear to be such expert proof of pertinent degeneration elsewhere in the record.

A-3024-19

Dr. Lomazow does note in his written report that an MRI of appellant's spine conducted in 2010 had revealed "longstanding . . . degenerative changes" at the C6-7 vertebrae. However, his report did not link those changes in the cervical spine to cognitive or mental problems. Further, Dr. Lomazow admitted on cross-examination at the hearing that he was not aware that appellant had "any pre-existing head injuries or concussions."

The term "degenerative changes" often is used in litigation involving claims of personal injury to describe how changes over time in a claimant's spinal column can produce debilitating injuries, commonly orthopedic in nature. See, e.g., Johnson v. Scaccetti, 192 N.J. 256, 266 (2007) (quoting the defense's orthopedic expert's diagnosis that the plaintiff's back pain was caused by "preexisting degenerative changes that everyone of us gets along the way"); Singletary v. Wawa, 406 N.J. Super. 558, 567 (App. Div. 2009) (discussing, in a case involving head, neck, arm, and shoulder pain, plaintiff's "degenerative changes at C4-5 and C6-7").

"Degeneration" is a general medical term that signifies deterioration. It can refer to a "worsening of mental, physical, or moral qualities." Stedman's Medical Dictionary 503 (28th ed. 2006). In our cases, the term is almost

exclusively used to describe spinal injuries in which discs slowly wear down over time.

We are mindful the term "degenerative" is less frequently used to describe cognitive impairments, but it can be. See, e.g., In re Clark, 210 N.J. Super. 548, 557 (Ch. Div. 1986) (adopting a neurologist's observation that a patient's "different levels of cognitive functioning from day to day" was "consistent with degenerative diseases" in finding the patient incompetent to make certain medical decisions). In another illustration, the Legislature has used the term "degenerative" when describing mental disease. See N.J.S.A. 26:2M-16 (describing Alzheimer's as a "progressive, degenerative, and irreversible neurological disease").

The only degenerative condition Dr. Lomazow identified in appellant was a spinal injury. He described the spinal condition as one that was "longstanding and degenerative," which is the same phrase the ALJ used in explaining her finding of a lack of causation. As we have noted, the ALJ stated that Dr. Lomazow found appellant's symptoms "all unrelated to a closed head trauma, and found changes of this nature to be longstanding degenerative and diagnoses that are preexisting and unrelated to the incident." The record does not support that summary of Dr. Lomazow's diagnosis.

Because the record does not support the ALJ's finding on this principal element of the case, we remand the matter to the Board to reconsider its wholesale adoption of the ALJ's decision and denial of benefits. On remand, the Board may refer the matter back to the ALJ for reconsideration and clarification of her findings, with the discretion to reopen the record further with additional proofs if warranted. See In re Kallen, 92 N.J. 14, 23 (1983) (authorizing a remand to reopen administrative hearings in certain circumstances). If the ALJ issues such a new decision, it may then be presented to the Board for further consideration and a new final agency decision. We do not retain jurisdiction.

Remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3024-19