[No. C052030. Third Dist. Sept. 26, 2006.]

RYAN PETTIGREW, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, DEPARTMENT OF
CORRECTIONS AND REHABILITATION et al., Respondents.

COUNSEL

Mastagni, Holstedt, Amick, Miller, Johnsen & Uhrhammer and John R. Holstedt for Petitioner.

Robert W. Daneri, Suzanne Ah-Tye and Alan R. Canfield for Respondents.

OPINION

HULL, J.—Ryan Pettigrew filed a petition for a writ of review in this court pursuant to Labor Code section 5950 (hereafter all statutory references are to the Labor Code) to challenge a decision of the Workers' Compensation Appeals Board (WCAB) denying his claim for workers' compensation benefits (§ 3200 et seq.). We issued a writ of review directing the WCAB to submit the administrative record for review by this court.

Pettigrew contends he is entitled to workers' compensation benefits for injuries he sustained when he stopped to help at an accident scene he came upon on his way to work as a correctional officer for the California Department of Corrections and Rehabilitation, California Medical Facility (DOC).

The workers' compensation judge (WCJ) and the WCAB found that Pettigrew was not acting as a peace officer at the time he stopped at the accident and that his job duties did not require him to stop and render aid and, therefore, Pettigrew was not within the course and scope of his employment when he was injured. Having reviewed the administrative record, we appreciate Pettigrew's efforts to give assistance to those involved in the accident, but we find no reason to disturb the findings and conclusions of the WCAB. We affirm the order.

### FACTS AND PROCEEDINGS

On April 24, 2005, at approximately 5:15 a.m., Pettigrew was driving to work on Interstate 80, when he came upon and stopped to help at the place of a multivehicle accident. While helping an injured person, Pettigrew was near a parked truck, which was hit by an oncoming car. The impact drove the truck into Pettigrew and he himself was injured.

Pettigrew was and is employed as a state correctional officer in a prison. His job is safety and security of people in the prison (fellow officers, inmates, medical staff, etc.). He has no job duties outside the prison but did take a general oath to protect and serve the public. His duty day begins when he drives onto the prison grounds, but he does not start getting paid until he signs in on a log sheet. His work shift that day was to start at 6:00 a.m.

As Pettigrew drove to work on April 24, he was wearing his correctional officer uniform (a green jumpsuit) beneath a "cover" jacket that was customary for correctional officers to wear to hide the uniform for their own safety. At the accident scene, Pettigrew removed his cover jacket, exposing his uniform, so people would know he was there to help.

Pettigrew testified at the administrative hearing that he stopped at the accident scene because he saw several correctional officers (persons wearing green jumpsuits) standing on the side of the highway and thought someone might need help. He had learned first aid through his employment. He had received DOC training regarding law enforcement ethics and correctional officer ethics.

The Ethics Cadet Workbook contained a correctional worker's code of ethics, stating in part, "my primary concern is to serve mankind; to be ever mindful of the responsibilities entrusted in me by my fellow citizens; to protect the lives of those placed in my charge; to safeguard the weak against oppression or intimidation, and the peaceful against violence or disorder.

[¶] . . . [¶] My private and official life will exemplify honesty, integrity, compassion, and self-restraint. . . ."

The workbook also contained the law enforcement code of ethics, which said in part: "As a law enforcement officer, my fundamental duty is to serve mankind; to safeguard lives and property . . . ." The workbook stated as an objective: "You will be able to identify that law enforcement ethics govern the selection, training, and evaluation of correctional peace officers."

Pettigrew also had taken an oath to protect and serve the public, as well as protect and serve correctional officers and inmates at the job.

Pettigrew testified: "At the Academy, I believe they told us that if you were ever a witness to a crime or there was, like, a real bad accident in front of you, that if you did stop and help, that the institution would give you institutional time off for that time that you have missed work." When asked what he meant by "institutional time off," Pettigrew said, "They would not dock your pay. They would code it as, I believe, it's institutional time off, ITO that, basically, doesn't come out of your sick time or vacation time. It's, basically, like a credit from the Department."

Pettigrew did not introduce any evidence that he was paid with institutional time off for assisting at the accident.

As Pettigrew approached the place of the accident, he did not speak with any officer. Instead, Pettigrew instructed a man with an injured eye to lie down in the back seat of his car until further assistance arrived. Pettigrew then turned to assess the condition of a woman. He was shining his light on an unlit parked truck, into which another correctional officer (Mark Hook) was leaning in order to turn on its hazard lights. An approaching vehicle struck the truck, causing a vehicle to be pushed into Pettigrew. He was projected into the air and landed on the other side of the freeway.

Pettigrew later received a Rotary Club officer of the year award for his assistance at the accident scene.

Officer Hook testified he did not file a workers' compensation claim and did not receive paid institutional time off for the seven days he missed from work due to the injuries he sustained at the accident scene.

Correctional Sergeant Michael Amaro testified that he could see where parts of correctional officer training lesson plans can be interpreted as obligating officers to stop at the scene of an accident, but when asked for

specifics, he could not think of any specific parts of the lesson plans that would suggest that.

Correctional Lieutenant Steven Norris testified he worked at the same facility as Pettigrew and, although they were told in training not to wear their uniforms offsite, the institution was aware and accepted that some employees commuted to and from work wearing their uniform under a cover jacket. Norris said that, once he left the institution premises, he was no longer a correctional officer but was a private citizen. Norris testified as follows:

"Q. Okay. If an officer at your institution had stopped to render assistance at an accident on the freeway, such as these officers did on April 24, 2005, and that act made them late to work, would they be docked?

"A. If, on their reporting to the institution, this happened to cause them to be late, no."

Norris explained, "upon us learning why they were late, because of an accident and assisting, they would not be per se docked." They would not, at that point, lose pay for reporting to work late.

Norris said officers like him are paid hourly wages. Docking is a process handled by the personnel department, and Norris did not know that process. When asked if there was a policy for correctional officers to be compensated for time spent rendering assistance at an accident outside of the prison, Norris said, "Not to my knowledge." He also said, "It's been my training that a correctional officer begins his performance of his duties when he enters institutional grounds, is that of a peace officer. When he leaves grounds, he has left it there. He goes back to being a citizen."

The WCJ issued a written findings and order and opinion on decision, concluding Pettigrew was not entitled to workers' compensation benefits, because the injuries neither arose out of, nor occurred in the course of, his employment.

The opinion on decision said: "The applicant has no peace officer status outside the grounds of the institution unless he is on duty at the time. There is no evidence that he was on scheduled duty, and there is no argument that stopping at the accident scene had the effect of placing him on duty. The applicant does contend he is required to stop and render aid at an accident scene, and more specifically, render aid if an officer is in danger or has been injured.

"The clear weight of the evidence supports the conclusion that the applicant had no duties at the accident scene. Sgt. Hoff testified that the applicant was a private citizen while off the grounds of the institution. Lt. Norris agreed, but he did say a correctional officer would not lose pay if he or she were tardy because of stopping at an accident scene to render aid. Sgt. Amaro was unable to come up with anything which would lead him to believe that a correctional officer is required to stop and assist another correctional officer while off duty. He did say that they are taught to take care of each other. It is likely correctional officers do take care of each other, and I am not surprised that they would stop for one another while off duty to give aid. However, there is no substantial evidence that their employment requires them to do so.

"I have read the Cadets Code of Ethics, and it mainly prescribes conduct for peace officers. The applicant was not a peace officer when he provided assistance at the accident scene. To the extent that portions of the code may be read to set a standard of conduct for non-peace officers, they do not require the applicant to provide assistance while off duty."

Pettigrew filed a petition for reconsideration with the WCAB.

The WCJ issued a report and recommendation on petition for reconsideration, recommending denial of reconsideration, and stating in part:

"[T]he Dept. of Corrections does not require a correctional officer to stop to [r]ender aid to another correctional officer while off duty. Even if it did, the WCJ frankly did not believe the applicant's testimony ab[o]ut stopping to render aid to fellow correctional officers on this occasion. The WCJ considered that the applicant did not see any correctional officer who needed assistance, and perhaps more importantly, he went to assist two injured 'civilians' before even speaking to any correctional officers. There is no evidence that any of the correctional officers needed help until the applicant and another officer were nearly simultaneously injured.

"The applicant contends that the bond between correctional officers is such that the employer expects them to assist other officers while off duty. Special Agent Mark Hoff testified that an officer is under no obligation to help another officer who is in danger outside the prison. Even if one believes that the applicant stopped to assist other officers, he was not required (expected) to do so. Therefore, the injury did not arise out of the applicant's employment. If it had arisen from the employment it would have occurred in the course of the employment."

The WCAB adopted and incorporated the WCJ's report in an order denying reconsideration.

Upon Pettigrew's petition to this court, we issued a writ of review on May 4, 2006, and directed the WCAB to file the administrative record.

Discussion

I

*Standard of Review*

Section 5952 states: "The review by the court shall not be extended further than to determine, based upon the entire record which shall be certified by the appeals board, whether:

"(a) The appeals board acted without or in excess of its powers.

"(b) The order, decision, or award was procured by fraud.

"(c) The order, decision, or award was unreasonable.

"(d) The order, decision, or award was not supported by substantial evidence.

"(e) If findings of fact are made, such findings of fact support the order, decision, or award under review.

"Nothing in this section shall permit the court to hold a trial de novo, to take evidence, or to exercise its independent judgment on the evidence."

The WCAB's factual findings and conclusions, including findings of ultimate fact, are conclusive and final and not subject to review. (§ 5953.) "[T]he WCJ and the [WCAB] are the sole judges of credibility [citation]; and on issues relating to factual findings, our review is limited to a search of the record for substantial evidence in support of the findings. [Citation.]" (*Fleetwood Enterprises, Inc. v. Workers' Comp. Appeals Bd.* (2005) 134 Cal.App.4th 1316, 1325 [37 Cal.Rptr.3d 587].)

"Upon the hearing, the court shall enter judgment either affirming or annulling the order, decision, or award, or the court may remand the case for

further proceedings before the appeals board." (§ 5953.) A writ of mandate shall lie from the Court of Appeal in proper cases. (§ 5955.)

## II

### *There Are No Grounds for Annulment of the WCAB Order.*

■ Pettigrew argues his injury arose out of and in the course of employment even though he was off duty at the time it occurred. The WCAB decided the injury did not arise within the scope of Pettigrew's employment and we must determine whether there is substantial evidence supporting the WCAB's decision. We conclude there is, thus Pettigrew fails to show there are grounds for annulment of the WCAB order.

■ An employer is liable for injury sustained by an employee "arising out of and in the course of the employment," where specified conditions of compensation concur, including "at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment." (§ 3600.)

The employee bears the burden of proving that his or her injury arose out of and was sustained in the course of employment. Because we are required to liberally construe the law with the purpose of extending employee benefits if they are injured in the course of their employment (§ 3202), reasonable doubts as to whether an employee's injury arose from his employment are to be resolved in the favor of the employee. (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1290 [135 Cal.Rptr.2d 665, 70 P.3d 1076].)

■ As a general matter, an employee going to and coming from his or her place of employment is not rendering any service to the employer, and therefore injuries occurring during the commute do not qualify for workers' compensation benefits. (*Santa Rosa Junior College v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 345, 351–352 [220 Cal.Rptr. 94, 708 P.2d 673].) But this "going and coming rule" is subject to a number of exceptions. (*Id.* at pp. 352–353.)

■ Pettigrew argues the "going and coming rule" is inapplicable here because he was not in his vehicle when he was injured. He thus attempts to distinguish earlier cases where employees were injured in automobile accidents while driving to or from work and were denied recovery. We cannot agree because one need not be in a vehicle in order to be commuting. To the

extent that Pettigrew stopped his commute in order to help at the accident scene, his actions still did not place him on duty in service to his employer.

The case before us is distinguishable from Pettigrew's cited authority, *Minor v. Sonoma County Employees Retirement Bd.* (1975) 53 Cal.App.3d 540 [126 Cal.Rptr. 16]. In *Minor*, a uniformed deputy sheriff was involved (but not injured) in an automobile accident on his way to work. He pulled over, called the sheriff's office, and then broke his ankle on his way back to the accident scene to direct traffic, render first aid to others, and secure the scene pending arrival of the highway patrol. The lawsuit involved his attempt to obtain disability retirement benefits. *Minor* held the workers' compensation "going and coming rule" did not necessarily apply to the question of public-service-connected disability retirement benefits, but even if it did, the going and coming rule did not bar entitlement to a pension because the deputy sheriff was injured not while driving to work, but while attempting to perform duties related to his employment in rendering first aid, directing traffic, and securing the area of a car accident. (*Id.* at pp. 544–546.)

The difference is that, in *Minor*, it was uncontradicted that assisting at accident scenes was part of the employee's duties as deputy sheriff. (*Minor v. Sonoma Employees Retirement Bd.*, *supra*, 53 Cal.App.3d at p. 546.) Here, there was substantial evidence that Pettigrew's employment duties did not include assisting at accident scenes on the public highways.

Pettigrew also cites *Garzoli v. Workers' Comp. Appeals Bd.* (1970) 2 Cal.3d 502 [86 Cal.Rptr. 1, 467 P.2d 833], which held that a police officer who was effectively required to wear his uniform while commuting to work, and was expected by his superiors to render assistance when necessary, was in the course of his employment during his commute. (See *State Lottery Com. v. Workers' Comp. Appeals Bd.* (1996) 50 Cal.App.4th 311, 318 [57 Cal.Rptr.2d 745] [uniform signals to citizens in need of assistance that the officer is a law enforcement officer].)

Here, in contrast, Pettigrew's employer did not require him to wear his uniform while commuting. Rather, the employer merely tolerated workers wearing their uniform off premises as long as they hid it under a cover jacket. While commuting, Pettigrew wore the cover jacket so his uniform would not be visible. Here, as earlier noted, there was no evidence that DOC expected Pettigrew to render assistance at an accident scene outside of prison premises. To the contrary, it is clear he had no authority to act as a correctional officer (or peace officer) outside the prison. We note that the workers' compensation law specifically grants certain compensation and benefit rights to off-duty

police officers, but its definition of such officers excludes correctional officers such as Pettigrew. (§ 3600.2.)

Nor is Pettigrew a peace officer whose authority extends anywhere in the state. (Pen. Code, § 830.2.) The only members of the DOC who are classified as peace officers with statewide authority under Penal Code section 830.2 are (1) any member of the law enforcement and investigations unit of the DOC, provided that his or her primary duties are the investigation or apprehension of parolees, parole violators, or escapees from state institutions, the transportation of those persons, and the coordination of those activities with other criminal justice agencies, and (2) any member of DOC's Office of Internal Affairs (with specified duties).

Here, Pettigrew admitted at the administrative hearing that he was not a member of DOC's law enforcement and investigations unit or its Office of Internal Affairs.

Pettigrew does not assert he was acting under authority of Penal Code section 830.5 (extending authority of specified DOC employees in specified circumstances).

Nor does Pettigrew assert he was responding to a declared emergency under Government Code sections 8597 or 8598 (emergency response at request of local authorities), so as to be authorized to act as a peace officer under Penal Code sections 830.3 or 830.5.

█ In all, the fact that the law enforcement code of ethics for correctional officers speaks of a duty to serve humankind and safeguard lives and property does not confer authority on a correctional officer to act outside the scope of his statutory jurisdiction.

█ Pettigrew argues he reasonably believed his employer impliedly, if not expressly, permitted him to respond to this accident and assist the injured parties. He cites *Wright v. Beverly Fabrics, Inc.* (2002) 95 Cal.App.4th 346 [115 Cal.Rptr.2d 503], which held workers' compensation was the exclusive remedy for a retail store employee who was injured when she went to the store on her day off to sign a condolence card for coworkers and injured her back when she helped other employees hold up a collapsing shelf. The Fifth Appellate District concluded the employee was hurt holding up a shelf in an effort to protect her employer's property, an activity reasonably contemplated by her employment. (*Id.* at p. 356.) Pettigrew cites *Wright*'s comment that a worker who sustains an injury while rendering reasonably needed assistance

to fellow workers in furtherance of the employer's business is considered to have suffered an injury arising out of and in the course of his employment when the act is done within reasonable contemplation of what the employee may do in the service of his employer. (*Ibid.*)

Here, however, Pettigrew was not on his employer's premises and was not trying to protect property of his employer. Nor were his actions here reasonably contemplated by his employment.

Pettigrew argues he was serving his employer because he pulled over to see if his coworkers had been hurt and needed medical or other assistance. However, we are bound by the WCJ's factual findings (adopted by WCAB) that the WCJ "frankly did not believe the applicant's testimony ab[o]ut stopping to render aid to fellow correctional officers on this occasion. The WCJ considered that the applicant did not see any correctional officer who needed assistance, and perhaps more importantly, he went to assist two injured 'civilians' before even speaking to any correctional officers. There is no evidence that any of the correctional officers needed help until the applicant and another officer were nearly simultaneously injured."

■ Pettigrew argues it was objectively reasonable for him to believe the state expected him to render aid at accident scenes while off duty, because it was common practice not to dock an officer's pay for such conduct. Certainly, payment of compensation by the employer for the period when the injury occurred would be a factor in favor of awarding workers' compensation benefits. (*Kobe v. Industrial Acc. Com.* (1950) 35 Cal.2d 33, 35 [215 P.2d 736].) Here, however, the evidence was equivocal at best on this point. There was no evidence that Pettigrew was paid for stopping to help at the accident scene (without being charged as sick leave or some other leave related to his injuries). He testified about "institutional time off" but never presented any concrete evidence of what that meant or how it worked, nor did he cite any regulation authorizing such payment.

We conclude Pettigrew fails to show grounds for annulment of the WCAB order denying his petition for reconsideration.

DISPOSITION

The order of the WCAB is affirmed. The parties shall bear their own costs on the writ petition. (Cal. Rules of Court, rule 56(*l*).)

Scotland, P. J., and Raye, J., concurred.

Petitioner's petition for review by the Supreme Court was denied December 13, 2006, S147818.